2011 UT 36

**STATE of Utah, Plaintiff and Appellee,**

v.

**Douglas Anderson LOVELL, Defendant and Appellant.**

No. 20061025.

Supreme Court of Utah.

Aug. 30, 2011.

Mark L. Shurtleff, Att'y Gen., Laura B. Dupaix, Asst. Att'y Gen., Salt Lake City, for plaintiff.

David V. Finlayson, Salt Lake City, for defendant.

## AMENDED OPINION *

NEHRING, Justice:

## INTRODUCTION

¶ 1 This is Mr. Lovell's third direct appeal of his conviction for the aggravated murder of Joyce Yost. In this appeal, Mr. Lovell challenges the district court's denial of his motion to withdraw his guilty plea. We reverse the holding of the district court and hold that the trial court's failure to strictly comply with Utah Rule of Criminal Procedure 11(e) constituted good cause to allow Mr. Lovell to withdraw his guilty plea.

## BACKGROUND

¶ 2 This case has been before us on two occasions. We previously detailed the facts related to the crime in *State v. Lovell* (*Lovell I* ), 1999 UT 40, 984 P.2d 382, and the procedural history that resulted in our remand of the case to the district court to consider Mr.

Lovell's motion to withdraw his guilty plea in *State v. Lovell* (*Lovell II* ), 2005 UT 31, 114 P.3d 575. We previously stated, "[w]e do not discount the heinous circumstances of Ms. Yost's death by not repeating the details of the crime in this appeal, but we limit our recitation to the ... facts on which the issues of this appeal are centered." *Id.* ¶ 2. We pause to reiterate this observation here.

¶ 3 Following the entry of his guilty plea, Mr. Lovell moved to withdraw it. The district court initially held that Mr. Lovell's motion was untimely, but we reversed that holding and remanded the case for consideration of the merits of Mr. Lovell's motion. *Id.* ¶ 29. In the district court, Mr. Lovell argues his motion was meritorious for at least two reasons. First, he argued that he had good cause to withdraw his plea because the trial court failed to strictly comply with Utah Rule of Criminal Procedure 11(e),[1] which sets out the requirements for a lawful guilty plea. Mr. Lovell alleged that the trial court fell short of rule 11(e)'s requirements because the trial court failed to inform him that if he pled guilty he would be waiving the following rights: the right to be presumed innocent, the right against self-incrimination, the right to a speedy public trial before an impartial jury, the right to confront and cross-examine witnesses, the right to compel attendance of witnesses, the right to require the prosecution to prove each element of the crime beyond a reasonable doubt, the right to a unanimous jury verdict, and the right requiring a jury to find that the death penalty may only be imposed when a jury determines that it is the only justified and appropriate penalty beyond a reasonable doubt. Mr. Lovell also alleged that the trial court failed to strictly comply with rule 11(e) because it did not properly inform him of his right to an appeal, of the time limit for moving to withdraw his guilty plea, and because it did not properly determine what plea agreement was reached by Mr. Lovell and the State. Second, Mr. Lovell claimed that there was good cause for him to withdraw his plea because his trial counsel was ineffective.

---

* The court has rewritten paragraph 80 of the amended opinion issued July 12, 2011.

1. Because Mr. Lovell entered his guilty plea in 1993, we will refer to the version of rule 11(e) in effect at this time throughout our opinion unless otherwise specified.

The State responded to each of Mr. Lovell's claims and urged that there was not good cause to allow Mr. Lovell to withdraw his plea.

¶ 4 The district court[2] held that the trial court complied with rule 11(e) and that, even if it did not, the error did not amount to good cause to allow Mr. Lovell to withdraw his plea because Mr. Lovell did not show that but for the error he would not have pled guilty. The district court also rejected all of Mr. Lovell's specific claims of ineffective assistance of counsel. Finally, the district court held that Mr. Lovell's argument that his counsel's failure to conduct a mitigation investigation for the penalty phase was not relevant to the motion to withdraw the plea and declined to address it. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(i), (j) (2008).

## STANDARD OF REVIEW

¶ 5 A district court's ruling on a motion to withdraw a guilty plea involves both factual and legal determinations, and thus invites multiple standards of review. *See State v. Beckstead,* 2006 UT 42, ¶¶ 7–8, 140 P.3d 1288.

> We will overturn a [district] court's ruling on a motion to withdraw a guilty plea only when we are convinced that the court has abused its discretion. We will disturb findings of fact made in connection with a ruling on a motion to withdraw a guilty plea only if they are clearly erroneous.

*Id.* ¶ 7. However, "the 'ultimate question of whether the [trial] court strictly complied with constitutional and procedural requirements for entry of a guilty plea is a question of law that is reviewed for correctness.' " *Id.* ¶ 8 (quoting *State v. Hittle,* 2004 UT 46, ¶ 4, 94 P.3d 268). In these cases, the correctness standard often displaces the abuse of discretion standard because a strict compliance violation will almost certainly constitute an abuse of discretion. *See id.*

2.  As a result of the unique procedural history of this case, the hearing to determine whether or not the trial court strictly complied with rule 11(e) in accepting Mr. Lovell's plea was called a 23B hearing and the district court is often referred to as the 23B court. *Lovell II,* 2005 UT 31, ¶ 27, 114 P.3d 575. At the hearing, the

## ANALYSIS

¶ 6 On appeal, Mr. Lovell challenges the district court's determination that the trial court strictly complied with rule 11(e). He also takes issue with the district court's holding that even if the trial court failed to strictly comply with rule 11(e), Mr. Lovell must show that he would not have pled guilty absent the trial court's errors in order for there to be good cause for the plea to be withdrawn. Next, Mr. Lovell argues that the district court plainly erred in denying his motion to withdraw his plea because it was taken in violation of his due process rights under the Utah and United States Constitutions. Finally, Mr. Lovell asserts that the district court erred when it found that his trial counsel was not ineffective during the plea process.

¶ 7 Because we find the trial court's failure to strictly comply with rule 11(e) and its determination that Mr. Lovell lacked good cause to withdraw his guilty plea to be the dispositive inquiries in this case, we limit our opinion to the resolution of these issues, and decline to address Mr. Lovell's other claims. *See State v. Ott,* 2010 UT 1, ¶ 13, 247 P.3d 344 (citing *State v. Carter,* 776 P.2d 886, 889 (Utah 1989) (noting courts should "focus judicial resources and energy on those critical or outcome-determinative issues" raised in the case)).

## I. THE TRIAL COURT FELL SHORT IN PERFORMING ITS DUTY TO STRICTLY COMPLY WITH RULE 11(e)

¶ 8 We begin our discussion of the issues raised by Mr. Lovell with an analysis of whether the trial court strictly complied with Utah Rule of Criminal Procedure 11(e) when it accepted Mr. Lovell's guilty plea.

district court concluded that although the trial court did not cover all of Mr. Lovell's rights in the plea colloquy, the "record as a whole show[ed] that [Mr.] Lovell's experience in the criminal justice system ... amply communicated to him the meaning of these expressly omitted rights."

¶ 9 The district court held that although nowhere in the plea colloquy or in the plea statement did the trial court expressly mention the right to the presumption of innocence and the right to a speedy, public trial before an impartial jury, the trial court nevertheless strictly complied with rule 11(e) because Mr. Lovell was informed of the omitted rights by virtue of his "personal experience with the criminal justice system and the overall context in which the plea was taken." Because Mr. Lovell continuously made timely objections to the State's reliance on his past experience with the criminal justice system to show strict compliance, we find that the issue of whether the trial court strictly complied with rule 11(e) was properly preserved.[3] *See Brookside Mobile Home Park Ltd. v. Peebles,* 2002 UT 48, ¶¶ 14–15, 48 P.3d 968 ("[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue.").

¶ 10 Finding the issue was properly preserved, we proceed to review the district court's reliance on Mr. Lovell's past trial experience to determine whether the trial court complied with the requirements set forth in rule 11(e).

### A. A Defendant's Past Trial Experience Cannot Support a Finding of Strict Compliance With Rule 11(e)

¶ 11 The version of Rule of Criminal Procedure 11(e) in effect when Mr. Lovell entered his plea states that a judge may not accept a guilty plea until the court has *found*

(1) if the defendant is not represented by counsel, he or she has knowingly waived the right to counsel and does not desire counsel;

(2) the plea is voluntarily made;

(3) the defendant knows of the right to the presumption of innocence, the right against compulsory self-incrimination, the right to a speedy public trial before an impartial jury, the right to confront and cross-examine in open court the prosecution witnesses, the right to compel the attendance of defense witnesses, and that by entering the plea, these rights are waived;

(4) the defendant understands the nature and elements of the offense to which the plea is entered, that upon trial the prosecution would have the burden of proving each of those elements beyond a reasonable doubt, and that the plea is an admission of all those elements;

(5) the defendant knows the minimum and maximum sentence, and if applicable, the minimum mandatory nature of the minimum sentence, that may be imposed for each offense to which a plea is entered, including the possibility of the imposition of consecutive sentences;

(6) if the tendered plea is a result of a prior plea discussion and plea agreement, and if so, what agreement has been reached;

(7) the defendant has been advised of the time limits for filing any motion to withdraw the plea; and

(8) the defendant has been advised that the right of appeal is limited.

Utah R.Crim. P. 11(e).

¶ 12 In *State v. Gibbons,* we held that "[b]ecause of the importance of compliance with Rule 11(e) ... the law places the burden of establishing compliance with those requirements on the trial judge." 740 P.2d 1309, 1313 (Utah 1987). The trial judge must "fulfill the ... requirements imposed by [rule 11(e) ] on the record before accepting

---

**3.** Indeed, Mr. Lovell made the following argument before the district court and continued to reference it on appeal:

The State argues that [Mr.] Lovell has been "through the criminal justice system before," and alludes that due to this knowledge of the criminal justice system any failure on the part of the trial court in the taking of his guilty plea can be offset by [Mr.] Lovell's prior knowledge of how the plea colloquy [sic]. This argument is deeply flawed. The State's argument is analogous to the argument presented in *State v. Snyder,* 860 P.2d 351 (Utah App.1993), wherein the State contended that the defendant's occupation as a police officer excused any noncompliance with the *Miranda* requirements.... [Mr.] Lovell's assumed knowledge of his rights, due to his being involved in the criminal justice system before, cannot be used as a basis for neglecting to give him the requisite Rule 11 colloquy to which every other Utah citizen is entitled.

the guilty plea." *Id.* at 1314. Although rule 11(e) does not require the judge to personally address the defendant regarding the rights the defendant is waiving, our cases impose a duty on the trial judge under rule 11(e) to determine that a defendant has been affirmatively advised of the rights he is waiving. *See id.* at 1313–14.

¶ 13 In *State v. Smith,* we held that "[i]n order for [a] defendant's guilty plea to be valid and in compliance with rule 11(e)(5) of the Utah Rules of Criminal Procedure and [with] *State v. Gibbons,* the record must show *that [the defendant] was unequivocally and clearly informed* about the sentence that would be imposed." 777 P.2d 464, 466 (Utah 1989) (emphasis added). Following *Gibbons,* we have described the duty of fulfilling the requirements of rule 11(e) as one of "strict compliance." *State v. Hoff,* 814 P.2d 1119, 1123 (Utah 1991). In *Hoff,* we stated that

> [t]he rule announced in *Gibbons* was intended to ensure that the record demonstrates that the judge who takes the plea personally establishes that a defendant's guilty plea is truly knowing and voluntary. To that end, *Gibbons* requires that at the time a guilty plea is entered the judge should establish on the record that the defendant knowingly waived his or her constitutional rights and understood the elements of the crime.

*Id.* at 1122.

¶ 14 Although strict compliance with rule 11(e) after *Gibbons* requires a judge to establish that the defendant knowingly waived his constitutional rights, we have also noted that "strict compliance can be accomplished by multiple means so long as no requirement of the rule is omitted and so long as the record reflects that the requirement has been fulfilled." *State v. Maguire,* 830 P.2d 216, 218 (Utah 1992). "Strict compliance ... does not mandate a particular script or rote recitation of the rights listed.... [T]he substantive goal of rule 11 is to ensure that defendants know of their rights and thereby understand the basic consequences of their decision to plead guilty." *State v. Visser,* 2000 UT 88, ¶ 11, 22 P.3d 1242 (citations omitted).

¶ 15 In *Maguire,* we identified what parts of the record may be examined when determining whether a court met its duty to strictly comply with rule 11. 830 P.2d at 218. There, we held that the record before the appellate court must contain a basis for the trial court's finding that the rule 11 criteria have been met

> but [the] record may reflect such a basis by multiple means, e.g., transcript of the oral colloquy between the court and defendant, contents of a written affidavit that the record reflects was read, understood, and acknowledged by defendant and the court, contents of other documents such as the information, presentence reports, exhibits, etc., *similarly incorporated into the record,* and so on.

*Id.* (emphasis added).

¶ 16 Although *Maguire* makes clear that the judge's finding may be based on information other than the plea colloquy and plea affidavit, *Maguire* does not remove the requirement set out by *Smith* that the record must show that the defendant was "unequivocally and clearly informed" about each right he was waiving. *Smith,* 777 P.2d at 466. The plain language of *Maguire* confirms that although a variety of sources may be used to show that the defendant was informed of his rights, those sources must be incorporated into the record in the same manner as a plea affidavit. That is, the record must reflect that those documents were read and understood by the defendant.

¶ 17 A footnote in *State v. Maguire* suggests that sources of support for a finding that the defendant knowingly waived the enumerated rights are limited. It states,

> The proper distinction is between our post–*Gibbons* "strict compliance" test and the pre–*Gibbons* "substantial compliance" test. Both tests require an appellate court to review the record as a whole, although it is possible that the definition of the "record as a whole" under the substantial compliance test might be broader (including information in the case known to the defendant but not to the judge taking the plea—e.g., evidence at preliminary hearing, confessions, etc.) than it is under the

strict compliance test. We do not decide that issue now.

*Maguire*, 830 P.2d at 218 n. 1 (citation omitted). This footnote suggests that under the strict compliance test, the trial judge could not look to the defendant's past trial experience outside of the proceedings where that judge had observed the defendant. We now formally adopt this view. The requirement that other documents be incorporated into the record in the same way as an affidavit further reinforces that a trial court cannot rely on a defendant's past trial experiences or assumptions about the defendant's knowledge based on those experiences to find strict compliance with rule 11(e).

*B. Strict Compliance With Rule 11(e) Requires a Trial Judge to Determine That a Defendant Clearly and Unequivocally Understands His Constitutional Rights*

¶ 18 Having determined that a defendant's past trial experience cannot support a finding of strict compliance with rule 11(e), we now address what may support a finding that a defendant knows and understands his rule 11(e) rights. We have addressed this question before in *State v. Corwell*, 2005 UT 28, 114 P.3d 569 and *State v. Visser*, 2000 UT 88, 22 P.3d 1242.

¶ 19 In *Visser*, the defendant pled guilty after his trial had commenced. 2000 UT 88, ¶¶ 3–4, 22 P.3d 1242. When taking the defendant's plea, the trial court advised him that he had "a right to continue [the] trial through to a jury verdict." *Id.* ¶ 4. The trial judge asked him, "Do you understand that you have the right to go through with that trial and . . . you would have the right to see that trial is conducted fairly and properly?" *Id.* Mr. Visser answered in the affirmative and the trial court ordered that the plea be entered. *Id.* The next day, the defendant unsuccessfully moved to withdraw his guilty plea. *Id.* ¶ 6. The defendant appealed, alleging he was not properly advised of his right to "a speedy public trial" or his right to present his case before an impartial jury. *Id.* ¶¶ 6–7. Although the court of appeals agreed with the defendant, we reversed and held that "the trial court's colloquy, in light of the mid-trial context of the plea, provided an adequate basis in the record to conclude that the trial court strictly complied with rule 11." *Id.* ¶ 13. Given that the defendant had already essentially received the benefit of his right to a speedy trial and his right to an impartial jury because his trial had already begun, "the trial court's modification of the colloquy to fit the peculiar circumstances of the case fulfilled the court's duty to 'personally establish that the defendant's guilty plea [was] truly knowing and voluntary.'" *Id.* ¶ 15 (alteration in original) (quoting *State v. Abeyta*, 852 P.2d 993, 995 (Utah 1993)).

¶ 20 Following *Visser*, we next addressed the question of strict compliance with rule 11(e) in *Corwell*. Ms. Corwell sought to withdraw her plea on the grounds that she was not properly informed of her right to a speedy trial or the limitations on her right to appeal. 2005 UT 28, ¶¶ 8–9, 114 P.3d 569. The trial court denied her motion, and the court of appeals reversed. *Id.* On certiorari review, we reversed the court of appeals' decision. In the plea colloquy, the trial judge told Ms. Corwell, "If you plead guilty, there's no trial next Monday. Do you understand that?" *Id.* ¶ 5. We reaffirmed that "'strict compliance can be accomplished by multiple means so long as no requirement of the rule is omitted and so long as the record reflects that [each] requirement has been fulfilled.'" *Id.* ¶ 12 (quoting *Maguire*, 830 P.2d at 218). We held that "[t]he district court fully satisfied the demands of strict compliance when it adequately informed [Ms.] Corwell of her right to a speedy trial, using a modified phrase to fit [her] particular circumstances, and it properly incorporated into the record the plea affidavit, which informed [her] of her limited right of appeal." *Id.* ¶ 22. When describing the issue in *Corwell*, we framed it as a "question of whether a defendant was provided with a sufficient understanding of rule 11(e) rights." *Id.* ¶ 12.

¶ 21 A determination of whether the trial court strictly complied with rule 11(e) in Mr. Lovell's case turns on what it means for a defendant to be "informed" or "provided with a sufficient understanding" of his rights. The State urges us to extend the conceptual reach of *Corwell* and *Visser* by adopting a rule that a trial judge may lawfully accept a

guilty plea so long as the trial court "has a reasoned basis to conclude the defendant already knows" of that right. In contrast, Mr. Lovell asserts that the trial court must expressly inform a defendant of his rights during the plea colloquy, and that doing so is a necessary predicate to rule 11(e) compliance.

¶ 22 In arguing for the broad reading of what it means to be "informed," the State focuses on language used in *Visser* and quoted in *Corwell*, that discusses the defendant's personal trial experience in his current case to analyze whether the trial court strictly complied with rule 11(e). In *Visser*, we noted that "the record details [Mr.] Visser's personal trial experience up to the point of his plea agreement." 2000 UT 88, ¶ 13, 22 P.3d 1242. We concluded that "this experience communicated at least as much as would the mere oral recitation of the 'right to a speedy public trial before an impartial jury.'" *Id.* We also stated that Mr. Visser's "experience of witnessing and participating in jury selection communicated the manner of providing an impartial jury in a more tangible way than could mere words." *Id.* ¶ 16. Relying on this language from *Visser*, we stated in *Corwell* that "the district court may consider other factors in the record, including the defendant's 'personal trial experience,'" in making the finding that the defendant was informed of his rights as required by rule 11. 2005 UT 28, ¶ 12, 114 P.3d 569.

¶ 23 The State concedes that neither *Visser* nor *Corwell* held that the trial court could rely on a defendant's past trial experience in other cases to determine that the defendant was informed of the rights being waived. Despite this concession, the State urges that because *Visser* and *Corwell* do not expressly prohibit a trial court from concluding that a defendant was informed of the rights he was waiving under rule 11(e) due to his past trial experience, such a finding should be permitted. The State asserts that *Visser* and *Corwell*

> stand for the proposition that the plea court may tailor the plea inquiry to what the court has a reasoned basis to conclude the defendant already knows. That the knowledge derive[d] from past rather than

present trial experience [should] mak[e] no difference so long as the record before the plea court supports [the conclusion] that the defendant already knows of certain rights.

¶ 24 We decline to adopt such a broad reading of *Visser* and *Corwell*. First, in both *Visser* and *Corwell* the trial judge merely adapted the language of rule 11(e) to the situation when it advised the defendants of their rights. In both cases, this was a component of finding strict compliance. *Corwell*, 2005 UT 28, ¶ 19, 114 P.3d 569 (explaining that "the district court's repeated warning that [Ms.] Corwell's decision to plead guilty would result in her giving up her 'trial next Monday' communicated as much, if not more, about the timing of Corwell's trial than would its use of the generic and abstract phrase 'speedy trial'"); *Visser*, 2000 UT 88, ¶ 17, 22 P.3d 1242 ("[W]e hold that [Mr.] Visser's direct experience relative to his right to a speedy trial before an impartial jury, *coupled with the trial court's explanation that this right was a continuing one*, provided adequate record support for the trial court's conclusion that [Mr.] Visser knew of the right and understood that by pleading guilty he would waive it.") (emphasis added). Although we quoted the language in *Visser* regarding defendant's trial experience to support the concept that strict compliance with rule 11(e) did not require rote recitation of a script, in *Corwell*, we relied entirely on the trial court's advice to the defendant that she would be giving up "her trial next Monday" in finding strict compliance with rule 11(e).

¶ 25 Second, *Visser* presented a unique factual scenario in which the defendant's trial had already begun, and thus he had already received knowledge of the rights that he alleged were not communicated to him. 2000 UT 88, ¶ 14, 22 P.3d 1242. Because there is a presumption of regularity afforded to trial court proceedings, it can be presumed that since the jury in *Visser* had already been selected, the defendant was to be tried by an impartial jury. *See State v. King*, 2008 UT 54, ¶ 23, 190 P.3d 1283. Therefore, when Mr. Visser answered "yes" to the question, "[d]o you understand that you have the right to go

through with that trial and ... you would have the right to see that trial is conducted fairly and properly?", he affirmed that he knew that he would be able to continue with the impartial jury that had been selected to hear his case. *Visser*, 2000 UT 88, ¶ 4, 22 P.3d 1242. The language in *Visser* stating that the "experience of witnessing and participating in jury selection communicated the manner of providing an impartial jury in a more tangible way than could mere words" must be limited to factual situations similar to that in *Visser* where the defendant has actually received the right at issue throughout the proceeding. *Id.* ¶ 16. The mid-trial nature of the plea in *Visser* is sufficiently different from a plea entered before trial begins, and thus *Visser* cannot be extended to cases where the defendant has not received the challenged right. To do so would violate the rule 11(e) command to first find that the defendant actually knows of the right being waived.

¶ 26 Third, and most importantly, the State's preferred reading of *Visser* and *Corwell* is inconsistent with the plain language and purpose of rule 11(e), which requires the plea-taking judge to find that the defendant *knows* of the right, not that there is a reasoned basis to believe that the defendant knows of the right. *See* Utah R.Crim. P. 11(e). In *State v. Smith*, we held that a defendant must be "unequivocally and clearly informed about the sentence that would be imposed." 777 P.2d 464, 466 (Utah 1989). "Unequivocally and clearly informed" describes a very different standard than a "reasoned basis to conclude." *Smith* indicates that searching through the record to find something to support a conclusion that the defendant was aware of the right would not be adequate. *Smith* requires not only that it be possible for the trial judge to make a finding of fact that the defendant was aware of the right, but also that the court find that the defendant was actually aware of the right and that his awareness is clearly evident in the record of the trial proceedings in which the defendant pled guilty. Even in *Corwell* and *Visser*, where it appears we relaxed the "strict compliance" requirement, the approved relaxation permitted only the use of alternative forms of communication to inform the defendant of his rights.

¶ 27 The role that plea affidavits play in guilty pleas also supports requiring more than a reasoned basis to conclude that the defendant knows of the rights being waived by pleading guilty. A plea affidavit can be used to demonstrate that the defendant was informed of his rights, but "[i]t is not sufficient to assume that defense attorneys make sure that their clients fully understand the contents of the affidavit." *State v. Gibbons*, 740 P.2d 1309, 1313 (Utah 1987). The Advisory Committee Note to rule 11 also states that

> plea affidavits can save the court time, eliminate some of the monotony of rote recitations of rights waived by pleading guilty, and allow a more focused and probing inquiry into the facts of the offense, the relationship of the law to those facts, and whether the plea is knowingly and voluntarily entered.

Utah R.Crim. P. 11, Advisory Committee Note (Supp. 2009). But, the note goes on to advise that "[t]hese benefits are contingent on a careful and considered review of the affidavit by the defendant *and proper care by the trial court to verify that such a review has actually occurred.*" *Id.* (emphasis added). It would be illogical to require the court to verify that the defendant has actually reviewed the affidavit in order to rely on it to make a finding that he knew of his rights, yet allow the court to assume that a defendant's past trial experience adequately informed him. "The purpose of rule 11 is to ensure that defendants know their rights and understand the basic consequences of their decision to plead guilty." *State v. Dean*, 2004 UT 63, ¶ 9, 95 P.3d 276. Strict compliance with rule 11(e) "may take additional time, but constitutional rights may not be sacrificed in the name of judicial economy." *Gibbons*, 740 P.2d at 1314.

¶ 28 The State's standard does not comport with the plain language of rule 11(e) or fulfill its stated purpose of ensuring that defendant knows which constitutional rights he is waiving because it only requires a reasoned basis to conclude that the defendant knows his constitutional rights rather than a

confirmation that the defendant actually has that knowledge. Strict compliance cannot be based on assumptions about what knowledge a defendant's experience in a previous criminal proceeding conveyed. It must be found based on information that is properly part of the plea colloquy that clearly and unequivocally demonstrates the defendant is informed of the rights he is waiving.

¶ 29 Having established that past trial experience cannot support a finding of strict compliance with rule 11(e) and having clarified what may support a finding that the defendant knows of his rule 11(e) rights, we next analyze whether the trial court in Mr. Lovell's case fulfilled its duty to ensure that Mr. Lovell was clearly and unequivocally informed of the rights enumerated in rule 11(e) when he pled guilty.

### C. Mr. Lovell Was Not Clearly and Unequivocally Informed of His Rights Before He Entered His Guilty Plea

■■■ ¶ 30 Mr. Lovell was never specifically advised of his right to a presumption of innocence or his right to a speedy, public trial before an impartial jury.[4]

¶ 31 First, Mr. Lovell was not informed of his "right to the presumption of innocence." Utah R.Crim. P. 11(e)(3). The district court held that even though nowhere "did the plea colloquy or the plea statement expressly inform [Mr.] Lovell that he had the right to the presumption of innocence," the fact that the trial court advised Mr. Lovell of the State's burden of proof was equivalent to advising him of his right to be presumed innocent and therefore the trial court strictly complied with rule 11. The State urges us to affirm this holding. It argues that "[w]hile it is true that the concepts [of presumption of innocence and burden of proof] are distinct, that does not mean that the plea court's language did not accurately and adequately convey the concept of the presumption of innocence." In support of this argument, the State notes that our statutory definition of

presumption of innocence embraces the concept of burden of proof. *See* Utah Code Ann. § 76–1–501(1) (2008) ("A defendant in a criminal proceeding is presumed to be innocent until each element of the offense charged against him is proved beyond a reasonable doubt. In absence of such proof, the defendant shall be acquitted.") The structure of rule 11 and other courts' treatment of this issue, however, leads us to conclude that describing the state's burden does not necessarily convey the concept of a presumption of innocence.

¶ 32 Rule 11(e) requires that the trial court must find that the defendant both "knows of the right to the presumption of innocence," *and* that the state would have the burden of proving all the elements of the crime beyond a reasonable doubt. Utah R.Crim. P. 11(e)(3)-(e)(4). By specifically listing the right to be presumed innocent in addition to the right to have all elements of the crime proven beyond a reasonable doubt, the plain language of rule 11(e) demonstrates that advising a defendant on the burden of proof does not adequately convey the concept of the presumption of innocence.

■■■ ¶ 33 Treatment of these two rights in other contexts supports our conclusion that a defendant is not advised of the concept of the presumption of innocence by a description of the state's burden of proof. For example, other courts have noted that when there is a failure to advise a jury of the defendant's right to be presumed innocent, it is a "constitutional error even [if] the burden of proof was properly charged." *United States v. Vega,* 589 F.2d 1147, 1155 (2d Cir. 1978) (Gurfien, J. concurring). Indeed, the presumption of innocence is "an 'assumption' that is indulged in the absence of contrary evidence," and a presumption of innocence instruction should be given to a jury "even when a complete explanation of the burden of proof beyond a reasonable doubt is provided." *Taylor v. Kentucky,* 436 U.S. 478, 483

---

4. Because Mr. Lovell's right to compel attendance of witnesses, his right to confront and cross-examine witnesses, his right against self-incrimination, his right to require the prosecution to prove each element of the crime beyond a reasonable doubt, and his right to a unanimous jury verdict were all clearly listed in the Statement of Defendant in Advance of Guilty Plea, we limit our discussion to those rights that were not discussed in the plea colloquy or enumerated in Mr. Lovell's plea affidavit.

n. 12, 484, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). As stated in *Taylor*,

[w]hile the legal scholar may understand that the presumption of innocence and the prosecution's burden of proof are logically similar, the ordinary citizen well may draw significant additional guidance from an instruction on the presumption of innocence.

. . . .

[O]ne accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial. . . . [A]n instruction on the presumption is one way of impressing upon the jury the importance of [this] right.

*Id.* at 484–85, 98 S.Ct. 1930.

¶ 34 The concept embodied in a presumption of innocence instruction given to a jury is the same concept the defendant must be advised of prior to entering a guilty plea and the concerns regarding jurors' understanding of the right apply with equal force to a defendant preparing to plead guilty. Because rule 11(e) lists the right to be presumed innocent separately from the requirement of proof beyond a reasonable doubt, a defendant must be advised of each of these rights. We hold that informing Mr. Lovell of the State's burden of proof beyond a reasonable doubt did not clearly and unequivocally inform him of his right to the presumption of innocence.

¶ 35 Second, Mr. Lovell was not fully informed of his right to a "speedy public trial before an impartial jury." Utah R.Crim. P. 11(e)(3). Although neither the plea colloquy nor the plea affidavit addressed Mr. Lovell's right to a speedy trial, the district court held that because Mr. Lovell pled guilty on the day jury selection would have occurred, he must have been aware of this right. As to the right to a speedy trial, this case is similar to *Visser.* At the change of plea hearing, Mr. Lovell's attorney stated that the day of the hearing would have been the day jury selection would have begun. Later in the colloquy, the judge told Mr. Lovell, "You're giving up a right to have a trial by jury,"

which Mr. Lovell acknowledged. We agree with the district court that, much like in *Visser,* the fact that jury selection was scheduled to start on the day of Mr. Lovell's plea, coupled with the judge's advice that Mr. Lovell would be waiving his right to have the trial, adequately informed Mr. Lovell of his right to a speedy trial. But while Mr. Lovell was informed of his right to a speedy trial, we find his right to a public trial before an impartial jury was not properly communicated to him.

¶ 36 The district court found that the trial judge properly determined that Mr. Lovell knew of his right to a public trial. To make this determination, the district court relied entirely on Mr. Lovell's past trial experience and his testimony at the hearing on his motion to withdraw his plea that he knew his trial would be public. On appeal, the State argues that there was a reasoned basis for the trial court to conclude that Mr. Lovell was informed of his right to a public trial because previous proceedings before the trial judge were open to the public. For the purpose of determining whether the trial judge strictly complied with rule 11(e), we may not take into account information that came to light at the hearing on the motion to withdraw the guilty plea but was not known to the judge taking the plea. Therefore, we are limited to examining whether Mr. Lovell's attendance at proceedings before the trial judge that were open to the public demonstrates that Mr. Lovell knew of his right to a public trial.

¶ 37 Although a defendant could conclude from attending court proceedings that were open to the public that he had a right to ensure that the rest of his trial would be conducted in a similarly public fashion, such a conclusion is not the only one a defendant could draw. The trial court was required to determine that Mr. Lovell was clearly and unequivocally informed that he had the right to a public trial, not merely that it was likely that he knew of the right. Because experiencing some public proceedings prior to trial did not clearly and unequivocally advise Mr. Lovell of his right to a public trial, the trial court did not strictly comply with rule 11(e) in accepting Mr. Lovell's plea.

¶ 38 The district court also relied entirely on Mr. Lovell's previous experience with trial by jury when it determined that the trial court strictly complied with the rule 11(e) requirement that Mr. Lovell know of his right to an impartial jury. In addition to Mr. Lovell's previous trial experience, the State argues that Mr. Lovell knew he was entitled to an impartial jury because the plea court and Mr. Lovell's counsel discussed the need for and the content of juror questionnaires. Because Mr. Lovell's counsel assured the court that he would provide Mr. Lovell with a copy of the questionnaire, the State asserts that the concept of the right to an impartial jury was thereby conveyed to Mr. Lovell. Although it is possible that Mr. Lovell actually participated in preparing the jury questionnaire with his lawyer, Mr. Caine, it is just as likely that Mr. Caine prepared the questionnaire and merely provided a copy of the questionnaire to Mr. Lovell, or that he prepared the questionnaire and Mr. Lovell never examined its contents. We have previously held that "[i]t is not sufficient to assume that defense attorneys make sure that their clients fully understand the contents of [an] affidavit." *Gibbons,* 740 P.2d at 1313. If an assumption that defense attorneys make their clients aware of the contents of a plea affidavit is not sufficient to show strict compliance with rule 11(e), then a similar assumption regarding what rights a defendant may be aware of by virtue of possibly seeing a jury questionnaire or participating in its formulation also fails as a basis for strict compliance with rule 11(e).

¶ 39 The burden on trial judges to find that defendants are unequivocally and clearly informed of the rights listed in rule 11(e) demands more than a reliance on a reasoned basis to conclude that the defendant knew of the right. *See Maguire,* 830 P.2d at 218 n. 1 (noting that the "strict compliance" test and not the "substantial compliance" test is the correct measure of compliance with rule 11 after *Gibbons* ). The record before the trial court, consisting of the plea colloquy and "the contents of documents where they have been properly incorporated," must contain statements that clear-

ly and unequivocally instruct the defendant of the rights listed in rule 11(e). *See id.* at 218 n. 2. In this case, the record did not contain statements that clearly and unequivocally informed Mr. Lovell of his right to be presumed innocent or his right to a public trial by an impartial jury, and thus we conclude the trial court did not strictly comply with rule 11(e). Having determined that the trial court erred in failing to strictly comply with rule 11(e), we must now determine whether this error requires reversal.

## II. HARMLESS ERROR REVIEW DOES NOT APPLY TO THE TRIAL COURT'S FAILURE TO CLEARLY AND UNEQUIVOCALLY INFORM MR. LOVELL OF HIS RULE 11(e) CONSTITUTIONAL RIGHTS

¶ 40 The district court held that even if the trial court did not strictly comply with rule 11(e), such an error does not require reversal because Mr. Lovell failed to show "that the trial judge's errors prejudiced him, either in terms of showing that his guilty plea was not knowing and voluntary or in terms of showing that, but for the errors, [Mr. Lovell] would not have [pled] guilty."

¶ 41 We begin by noting that at the time Mr. Lovell moved to withdraw his plea, a guilty plea could be withdrawn "upon good cause shown and with leave of court." [5] Because the good cause standard applied to Mr. Lovell at the time he moved to withdraw his guilty plea, we review the district court's decision not to allow Mr. Lovell to withdraw his plea under the good cause standard and find it unnecessary to address the district court's conclusion that Mr. Lovell's plea was knowingly and voluntarily made. We then address the district court's conclusion that any failure by the trial court to strictly comply with rule 11(e) was harmless because Mr. Lovell failed to demonstrate that but for the trial court's errors he would not have pled guilty.

*A. A Trial Court's Failure to Strictly Comply With Rule 11(e) Constitutes Good Cause to Withdraw a Guilty Plea*

¶ 42 The district court began its analysis of Mr. Lovell's plea with *Bluemel v.*

5. Utah Code Ann. § 77–13–6(2)(a) (1990).

*State,* 2006 UT App 141, 134 P.3d 181, *rev'd on other grounds by Bluemel v. State,* 2007 UT 90, 173 P.3d 842. In *Bluemel,* the court of appeals stated that " '[i]t is well established under Utah law that we will presume harm ... when a trial court fails to inform a defendant of his constitutional rights under rule 11.' " *Id.* ¶ 10 (second alteration in original) (quoting *State v. Mora,* 2003 UT App 117, ¶ 22, 69 P.3d 838). While the district court recognized that there is a presumption of harm when a rule 11(e) violation occurs, it concluded that when *Bluemel* is examined in conjunction with *State v. Corwell,* 2005 UT 28, 114 P.3d 569 and *State v. Visser,* 2000 UT 88, 22 P.3d 1242, it appears that the presumption of harm is rebuttable "if the record shows that the defendant ... had a conceptual understanding of [the] constitutional right he was waiving at the time he [pled] guilty." We agree with the district court that in some cases the presumption of harm may be overcome. Although we agree with this conclusion, we also conclude that the State did not rebut the presumption of harm in Mr. Lovell's case, and therefore, Mr. Lovell established good cause to withdraw his guilty plea.

¶ 43 First, we conclude that *Corwell* and *Visser* do not concern the existence of a presumption. As we have noted in Part I of this opinion, these cases concern the role context can play when a trial court fails to explicitly communicate constitutional rights to a defendant. They do not concern the consequences of an *admitted* failure to comply with rule 11.

■ ¶ 44 Second, the reasoning of the district court is, in part, simply a reiteration of its finding that the trial judge strictly complied with rule 11(e) because the record indicated that Mr. Lovell had past experience with the criminal justice system. We explained in Part I of this opinion why this analysis is unavailing. Our strict compliance standard already allows examination of other record proceedings before the trial court that were properly incorporated into the plea colloquy to determine whether the rule 11(e)

concepts were clearly and unequivocally communicated to the defendant. Verbatim recitation of the rights listed in rule 11(e) is not required, so long as the defendant was clearly and unequivocally informed of the rights he was waiving during the criminal proceeding in which he pled guilty. We have already rejected the concept that a mere mention of past trial experience in the record conclusively demonstrates that the defendant was aware of all of his rule 11(e) rights. Pointing to a defendant's past experience with the criminal justice system, without more, is insufficient to rebut the presumption of harm that arises when a rule 11(e) violation occurs. Additionally, we have consistently stated that in " 'a direct appeal from denial of a motion to withdraw a guilty plea, ... failure to strictly comply with [rule 11] would be grounds for reversal.' " *Bluemel v. State,* 2007 UT 90, ¶ 18, 173 P.3d 842 (alterations in original) (quoting *Salazar v. Utah State Prison,* 852 P.2d 988, 991 n. 6 (Utah 1993)).

¶ 45 We conclude that the trial judge's failure to strictly comply with rule 11(e) requires us to presume harm and thus constitutes good cause to withdraw a guilty plea. Although strict compliance may be demonstrated using any information properly incorporated into the record of the current proceeding, a trial judge cannot demonstrate strict compliance by relying on a defendant's past experience with the criminal justice system or unsupported assumptions about the defendant's conceptual understanding.

■ ¶ 46 We now turn to the related question of whether the district court judge appropriately applied the harmless error analysis in its review of the trial court's failure to inform Mr. Lovell of his constitutional rights under rule 11(e).

*B. The District Court Erred in Applying a Harmless Error Analysis to the Trial Court's Failure to Strictly Comply With Rule 11(e)*

¶ 47 The district court held that Mr. Lovell did not demonstrate good cause [6] to with-

---

6. At the time Mr. Lovell initially moved to withdraw his plea, a guilty plea could be withdrawn "upon good cause shown and with leave of the court." Utah Code Ann. § 77–13–6(2)(a) (1990).

Currently, a "plea of guilty ... may be withdrawn only upon leave of the court and a showing that it was not knowingly and voluntarily made." Utah Code Ann. § 77–13–6(2)(a) (2008).

draw his plea because even assuming the trial court did not strictly comply with rule 11(e), Mr. Lovell failed to show that "but for this error, he would not have pled guilty." The district court arrived at this holding by concluding that plain error review applies to rule 11(e) violations and that the language in the court of appeals' case of *Mora*, 2003 UT App 117, ¶ 22 n. 4, 69 P.3d 838, and our two *Maguire* cases, *State v. Maguire* (*Maguire I* ), 830 P.2d 216 (Utah 1991), and *State v. Maguire* (*Maguire II* ), 830 P.2d 216 (Utah 1992), mandate a harmless error analysis.

¶ 48 In support of the district court's holding, the State also points to our application of harmless error to a rule 11 violation in *State v. Kay*, 717 P.2d 1294, 1301 (Utah 1986), *overruled on other grounds by State v. Hoff*, 814 P.2d 1119, 1123 (Utah 1991), and emphasizes that harmless error review of rule 11 violations has never been expressly disallowed following the advent of the *Gibbons* strict compliance test.

¶ 49 In addition to urging us to affirm the district court's reasoning, the State offers two additional reasons why harmless error should apply to rule 11 violations. First, the State suggests that we retroactively apply the current language in Utah Rule of Criminal Procedure 11(*l* ), which contemplates harmless error review. Second, the State argues that harmless error review should apply to rule 11 violations because we apply it in "nearly every other context," because other jurisdictions do so, and because doing so would be sound public policy. The State characterizes the errors in this case as "technical" and argues that under the harmless error test, unless Mr. Lovell can show that but for the errors he would have pled not guilty, there was not good cause to allow him to withdraw his plea.

¶ 50 We hold that the trial court's failure to strictly comply with rule 11(e) constituted good cause for Mr. Lovell to withdraw his plea, and that the district court erred when it applied a harmless error standard to this

deficiency. First, we conclude that plain error review does not apply to preserved rule 11(e) violations. Second, we conclude that *State v. Kay* does not apply to Mr. Lovell's case, and contrary to the district court's conclusion, our common law does not support the application of harmless error review to preserved rule 11(e) violations. Third, we hold that the current rule 11(*l* ) does not apply retroactively to Mr. Lovell's plea. Finally, we are not persuaded by the State's argument that our application of harmless error review in other contexts mandates its application in this case. We discuss each of these holdings below.

1.  The District Court Erred in Determining That Plain Error Must Be Shown in Order for a Defendant to Have Good Cause to Withdraw a Guilty Plea

¶ 51 First, the district court held that any error the trial judge made in complying with rule 11(e) is subject to the plain error standard of review usually reserved for errors raised for the first time on appeal, and that because Mr. Lovell failed to show plain error, he did not demonstrate good cause to withdraw his plea.

¶ 52 In arriving at this holding, the district court relied on the language in Utah Rule of Criminal Procedure 30(a), which states that "[a]ny error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." The district court found that this language is applicable to a trial court's failure to strictly comply with rule 11(e) and means that rule 11 errors must have a prejudicial effect on the outcome of the plea proceeding to justify reversal. In support of this reasoning, the district court relied on *United States v. Dominguez Benitez*, which interpreted similar language in Federal Rule of Criminal Procedure 52 to mean "error with a prejudicial effect on the outcome of a judicial proceeding." 542 U.S. 74, 81, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

The district court held that the two standards are the same, but the State clearly disagrees with that reading. Because neither party appealed the district court's holding that the two standards are equivalent, we will not address this question on appeal. Because both parties agree that the statute in effect at the time Mr. Lovell moved to withdraw his plea governs, we will apply the "good cause" standard.

¶ 53 Although Utah Rule of Criminal Procedure 30(a) and Federal Rule of Criminal Procedure 52 contain similar language, it is not clear that *Benitez* applies to all applications of Utah Rule of Criminal Procedure 30(a). The federal rule provides,

Rule 52. Harmless and Plain Error.

(a) Harmless error. Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

(b) Plain error. A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.

Federal Rule 52(a) mirrors the language of our rule 30(a). Under rule 52(a) "the [g]overnment avoids reversal of a criminal conviction by showing that trial error, albeit raised by a timely objection, affected no substantial right of the defendant and was thus harmless." *United States v. Vonn,* 535 U.S. 55, 58, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002). Thus, according to *Vonn,* where an error is *preserved,* rule 52(a) applies and the *government* has the burden to prove that the substantial rights of the defendant were not affected. *See id.* However, where an error is *unpreserved,* rule 52(b) controls and the *defendant* has the burden of showing that there is "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." *Dominguez Benitez,* 542 U.S. at 82, 124 S.Ct. 2333 (alteration in original) (internal quotation marks omitted).

¶ 54 While the burden of proving an effect on substantial rights under federal rule 52 falls on either the state or the defendant based on whether the error is preserved or unpreserved, Utah Rule of Criminal Procedure 30(a) is not similarly conditioned on preservation. Thus, in order to determine if the language in *Benitez* can aid us in interpreting rule 30(a), it is necessary to examine the procedural posture of *Benitez.* In *Benitez,* the defendant moved to withdraw his guilty plea, but he did not base his motion to withdraw his plea on an alleged violation of

rule 11; only on appeal did he allege that he should be allowed to withdraw his plea based on the trial court's failure to comply with rule 11. *Id.* at 79, 124 S.Ct. 2333. *Benitez,* therefore, involved an application of the rule 52(b) plain error standard to an *unpreserved* claim of rule 11 error. Because *Benitez* addressed harmless error review of an *unpreserved* rule 11 violation, the Supreme Court's language interpreting the phrase "error that affects substantial rights" does not persuade us that when applied to a *preserved* rule 11 violation, rule 30(a) requires that the defendant show that but for the error, the result of the proceeding would have been different.

¶ 55 Based on its conclusion that *Benitez* required the defendant to prove "a prejudicial effect on the outcome of a judicial proceeding" in the context of a preserved rule 11 claim, the district court held that under our case law, an error would be harmless in the change of plea context unless there was a reasonable likelihood that but for the alleged error, the defendant would not have pled guilty. The district court based this holding on *State v. Dean,* 2004 UT 63, ¶ 22, 95 P.3d 276. *Dean,* however, also involved plain error review of an *unpreserved* rule 11 claim. *Id.* ¶ 14. The unpreserved status of the claims in *Dean* and *Benitez* clearly distinguish them from Mr. Lovell's claim. Because the district court relied on cases where a rule 11 violation was unpreserved to determine plain error review applied to Mr. Lovell's claim, we conclude that the district court erred when it determined that Mr. Lovell was required to show plain error to demonstrate good cause to withdraw his plea.

2. Our Case Law Does Not Support the Application of Harmless Error to a Trial Court's Failure to Strictly Comply With Rule 11(e)

¶ 56 Prior to our decision in *Gibbons,* as long as the trial court demonstrated "substantial compliance" with rule 11, a defendant's guilty plea could not be withdrawn.[7]

---

**7.** For application of the "substantial compliance" test, *see Warner v. Morris,* 709 P.2d 309, 310 (Utah 1985) (holding that where the trial court failed to advise the defendant of his right against compulsory incrimination, the record as a whole demonstrated that he "entered his plea with full knowledge and understanding of its consequences and of the rights he was waiving, including his right against self-incrimination"); *State v. Miller,* 718 P.2d 403, 405 (Utah 1986)

*See State v. Hoff,* 814 P.2d 1119, 1123 (Utah 1991). *Gibbons* significantly changed the way pleas must be taken. Post–*Gibbons,* the trial court's burden shifted from one of substantial compliance to one of strict compliance. *See id.* This "strict compliance" standard requires the trial court to establish that "the defendant's guilty plea is truly knowing and voluntary" and that the "defendant knowingly waived his or her constitutional rights and understood the elements of the crime." *State v. Benvenuto,* 1999 UT 60, ¶ 11, 983 P.2d 556 (internal quotation marks omitted).

¶ 57 While we reaffirm our commitment to the strict compliance test, we note that post–*Gibbons,* we have rarely addressed the consequences of the failure to strictly comply with rule 11(e) and have never directly addressed the question of whether harmless error review applies to this failure. Indeed, Mr. Lovell is the first post–*Gibbons* defendant before this court to have a preserved motion to withdraw a guilty plea on the grounds that the record did not reflect that the trial court found that the defendant was clearly and unequivocally advised of all of his constitutional rights under rule 11(e).

¶ 58 The State urges us to affirm the decision of the district court and hold that harmless error applies to a trial court's rule 11(e) violations. According to the State, in the pre–*Gibbons* case, *State v. Kay,* 717 P.2d 1294 (Utah 1986), we applied harmless error review to a trial court's failure to strictly comply with rule 11, and post–*Gibbons,* we have never disallowed the application of this standard. The State also urges us to hold that the district court correctly determined that the "record as a whole" test continues to apply in examining a trial court's efforts to strictly comply with rule 11, and that "[a]s

long as the 'record as a whole' test [is] used, the harmless error doctrine clearly applie[s]."

¶ 59 Mr. Lovell disagrees that *Kay* is applicable to this case, argues it has no viability after *Gibbons,* and contends that any statement in *Kay* about harmless error is dicta. Mr. Lovell further argues that although we have not directly addressed the harmless error issue post–*Gibbons,* we have allowed defendants to withdraw guilty pleas as a result of a preserved rule 11 claim of error in at least three cases since *Gibbons* was decided, and none of these cases mentioned harmless error. *See State v. Thurman,* 911 P.2d 371, 375 (Utah 1996); *Maguire II,* 830 P.2d at 217; *State v. Smith,* 777 P.2d 464, 465 (Utah 1989).

¶ 60 We hold that *Kay* does not apply to Mr. Lovell's case and does not mandate harmless error review of a trial court's failure to advise a defendant of his constitutional rights under rule 11(e). We also hold that the district court erred in concluding that as long as the "record as a whole" test is used, harmless error applies. We first address the arguments under *Kay* and then address the district court's conclusion that examining the record as a whole to determine strict compliance requires harmless error review of any rule 11 violation.

¶ 61 *Kay* was decided in 1986, before trial courts were required to abide by the strict compliance standard in taking a defendant's guilty plea. In *Kay,* the judge engaged in plea negotiations with the defendant, an admitted failure to comply with rule 11(h). 717 P.2d 1294, 1301 (Utah 1986), *overruled on other grounds by State v. Hoff,* 814 P.2d 1119 (Utah 1991). In holding that the rule 11 violation was not an adequate basis for invalidating the plea, we stated that

(holding that where defendant alleged that he was not fully advised of the consequences of the plea but failed to provide a transcript of the plea colloquy proving as much, the regularity of the proceeding would be presumed); *Brooks v. Morris,* 709 P.2d 310, 311 (Utah 1985) (stating that "the record as a whole affirmatively establishes that [the defendant] entered his plea with full knowledge and understanding of its consequences.") (*overruled by State v. Hoff,* 814 P.2d 1119, 1123 (Utah 1991)); *Warner v. Morris,* 709 P.2d 309, 310 (Utah 1985) (holding that where

the trial court failed to advise the defendant of his right against compulsory incrimination, the record as a whole demonstrated that he "entered his plea with full knowledge and understanding of its consequences and of the rights he was waiving, including his right against self-incrimination"); *State v. Vasilacopulos,* 756 P.2d 92, 94–95 (Utah Ct.App.1988) (applying the pre–*Gibbons* substantial compliance test and holding that the record as a whole did not demonstrate that the defendant was aware of the possibility of consecutive sentencing).

[i]f we were to hold that any violation of Rule 11 automatically voids the resultant plea, *even when the plea is knowingly and voluntarily entered,* we would encourage defendants, convicted and sentenced after such a plea, to attack their convictions for purely tactical reasons, either by direct appeal or by seeking habeas corpus long after the fact.

*Id.* (emphasis added). While we went on to hold that harmless error review applied "to situations involving violations of [r]ule 11," *id.* at 1302, we did not state that harmless error review applies to all rule 11 violations, and we implied that an error that affected whether the plea was knowing and voluntary would be treated differently than a situation where the trial court's error did not involve informing a defendant of his constitutional rights. *See id.* at 1303. While *Kay* establishes a rule for harmless error review of rule 11(h) violations, we provided no guidance regarding whether harmless error review applies to a trial court's failure to advise a defendant of a constitutional right under rule 11(e) or whether such an error would be harmless. Having determined that *Kay* does not dictate that harmless error be applied in this case, we now turn to the district court's conclusion that since the "record as a whole" test continues to apply post–*Gibbons,* harmless error review also applies to a trial court's rule 11(e) plea taking deficiency.

¶ 62 The district court concluded that our decisions in *Maguire I, Maguire II,* and the court of appeals' decision in *State v. Mora,* taken together, suggest that because the "record as a whole" test continues to apply after *Gibbons,* harmless error continues to apply as well.[8] We disagree.

¶ 63 The district court began its reasoning with the following quote from *State v. Mora:*

Prior to the creation of the strict compliance test in *Gibbons,* Utah appellate courts applied a 'record as a whole' test to rule 11. As long as the 'record as a whole' test was used, the harmless error doctrine clearly applied to rule 11 violations. How-

ever, it is not clear whether the harmless error doctrine continues to apply to rule 11 violations after *Gibbons.*

2003 UT App 117, ¶ 22 n. 4, 69 P.3d 838 (citations omitted). The district court then pointed out that in *Maguire II* we rejected the idea that the *Gibbons* strict compliance test was incompatible with the record as a whole test. The district court concluded that because *Maguire II* held that the record as a whole test still applied after *Gibbons,* harmless error must also still apply based on the statement made in *Mora* that we had not expressly rejected harmless error after *Gibbons.*

¶ 64 In order to fully analyze the district court's decision, we must more closely examine the context of the quotations from *Maguire I* and *Maguire II* that the district court relied on in making its decision. In *Maguire I,* we stated, "[i]n *Gibbons,* this court adopted a 'strict compliance' test which superseded the 'record as a whole' test traditionally applied on review in cases dealing with … guilty pleas." 830 P.2d at 217. In *Maguire II,* we clarified our holding, stating that the difference between our pre–*Gibbons* test and our post–*Gibbons* test was the difference between "substantial compliance" and "strict compliance" and that although

[b]oth tests require an appellate court to review the record as a whole, … it is possible that the definition of the 'record as a whole' under the substantial compliance test might be broader (including information in the case known to the defendant but not to the judge taking the plea— e.g., evidence at preliminary hearing, confessions, etc.) than it is under the strict compliance test.

*Maguire II,* 830 P.2d at 217 n. 1. We went on to "restate our holding that (1) strict compliance with the elements of rule 11 is required in the taking of guilty pleas and (2) said compliance may be demonstrated on appeal by reference to the *record of the plea proceedings.*" *Id.* at 217 (emphasis added).

---

8. There are two *Maguire* opinions that arose from the same case. The first version of *Maguire,* which we will refer to as *Maguire I,* was issued in July, 1991. The second version of *Maguire,* which we will refer to as *Maguire II,* was issued in April, 1992 following a petition for rehearing of *Maguire I.*

¶ 65 In *Mora*, the court of appeals cited *Maguire I* and concluded, without explanation, that under the record as a whole test "the harmless error doctrine clearly applied to rule 11 violations." 2003 UT App 117, ¶ 22 n. 4, 69 P.3d 838. This statement is incorrect. As stated in Part I of our opinion, *Maguire I* and *Maguire II* address the scope of the "record as a whole" and discuss what information a trial court may properly consider in determining whether a defendant understands his rule 11(e) rights. *See supra*, ¶¶ 15–17. As the court of appeals implied in the same footnote, *Maguire I* and *Maguire II* do not address whether the harmless error analysis applies to a preserved claim that the trial court failed to strictly comply with rule 11(e). *See Mora*, 2003 UT App 117, ¶ 22 n. 4, 69 P.3d 838 ("However *it is not clear* whether the harmless error doctrine continues to apply to rule 11 violations after *Gibbons*." (emphasis added)). Indeed, had *Maguire II* operated as the district court suggested, the court of appeals would have been required to apply harmless error.

¶ 66 Although the court of appeals in *Mora* incorrectly determined that as long as the record as a whole test applied, harmless error review also applied, we conclude that other language and analysis contained in this opinion offer some helpful guidance. In *Mora*, the State charged Mr. Mora with one count of aggravated robbery and one count of theft from a person, along with other charges in separate proceedings. *Id.* ¶ 2. Mr. Mora pled guilty to the aggravated robbery, and in exchange, the State agreed to drop the other charges against him. *Id.* ¶ 3. During the plea colloquy, the trial court discussed the elements of the aggravated robbery charge, but failed to inform Mr. Mora that if he chose to go to trial, the State would have the burden to prove his guilt beyond a reasonable doubt. *Id.* ¶¶ 4, 10. Subsequently, Mr. Mora filed a motion to withdraw his guilty plea. *Id.* ¶ 13. Mr. Mora argued that he should be allowed to withdraw his plea because the trial court failed to strictly comply with rule 11. *Id.* The trial court denied his motion and Mr. Mora appealed. *Id.* ¶¶ 14–15.

¶ 67 The court of appeals reversed. *Id.* ¶¶ 23–24. It reasoned that because "the trial court failed to determine whether [Mr.] Mora understood that the State carried the burden of proving him guilty beyond a reasonable doubt, the trial court failed to strictly comply with rule 11." *Id.* ¶ 21. In arriving at this conclusion, the court of appeals "decline[d] to determine whether the harmless error doctrine applies to rule 11 violations." *Id.* ¶ 22. Rather, it held that " 'when a trial court fails to inform a defendant of his constitutional rights under rule 11,' " harm will be presumed. *Id.* (quoting *State v. Hittle*, 2002 UT App 134, ¶ 9, 47 P.3d 101).

¶ 68 In a footnote to its decision, the court of appeals expressed uncertainty about the scope of harmless error application. *Id.* ¶ 22 n. 4. It stated that before our decision in *Gibbons*, the record as a whole test applied to rule 11 violations, and that "[a]s long as the 'record as a whole' test was used, the harmless error doctrine clearly applied." *Id.* It then went on to state that following *Gibbons*, "it is not clear whether the harmless error doctrine continues to apply to rule 11 violations." *Id.*

¶ 69 We now resolve this uncertainty and make clear that the state of the law following *Gibbons* and before the language in subsection (*l*) was added to rule 11 is that the harmless error standard does not apply to a trial court's failure to strictly comply with rule 11(e). Because harmless error review does not apply, a defendant with a preserved rule 11(e) claim of error during this time period may demonstrate good cause to withdraw a guilty plea by merely showing the trial court failed to strictly comply with rule 11(e). We conclude that this rule is consistent with our post–*Gibbons* decisions and with the purpose of rule 11. *See State v. Thurman*, 911 P.2d 371, 375 (Utah 1996) (holding the trial court abused its discretion in denying the defendant's motion to withdraw his guilty plea because the defendant did not admit to facts demonstrating the required mental state); *Maguire II*, 830 P.2d at 217 (affirming the court of appeals' holding that Mr. Maguire had good cause to withdraw his guilty plea under *Gibbons* because the record did not show that the defen-

dant was properly informed as required by rule 11, he should be allowed to withdraw his plea); *Smith,* 777 P.2d at 465 (vacating the defendant's guilty plea when the defendant was not "clearly and unequivocally advis[ed] . . . that by pleading guilty he was subjecting himself to a mandatory prison sentence of at least five years"); *State v. Martinez,* 2001 UT 12, ¶ 22, 26 P.3d 203 ("The purpose of rule 11 is to ensure that a defendant knows of his . . . rights and thereby understands the consequences of a decision to plead guilty.").

¶ 70 We determine that harmless error review does not apply to the version of rule 11 in existence at the time Mr. Lovell entered his plea and therefore conclude that Mr. Lovell had good cause to withdraw his guilty plea. We now turn to the State's argument that the current version of rule 11 should apply retroactively to govern Mr. Lovell's case.

3. We Decline to Apply the Current Version of Rule 11 Retroactively Because the Current Version of Rule 11 Constitutes a Fundamental Shift in Strict Compliance Review

¶ 71 Next, the State argues that even if we find that harmless error review did not apply to the version of rule 11 in existence at the time Mr. Lovell entered his plea, the current version of rule 11 clearly mandates that harmless error review be applied, and we should apply the current version of rule 11 retroactively to govern Mr. Lovell's motion to withdraw his guilty plea.

¶ 72 The current version of Utah Rule of Criminal Procedure 11 states in part, "Compliance with this rule shall be determined by examining the record as a whole. Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Utah R. of Crim. P. 11(*l*) (2009). The State argues that even though this subsection was not added to the Utah Rules of Criminal Procedure until 2005, we should apply this subsection retroactively because it did not cause "such an abrupt and fundamental shift in doctrine as to constitute an entirely new rule which in effect replaced an older one." *State v. Baker,* 935 P.2d 503,

509 (Utah 1997) (internal quotation marks omitted). In order to reach this conclusion, however, the State begins with the premise that *Kay* required that harmless error be applied to all rule 11 violations and that after *Gibbons,* substantial compliance continued to apply. As our preceding discussion demonstrates, *Kay* did not conclusively apply harmless error review to all rule 11 violations, and even if it did, following *Gibbons,* failure to find that a defendant was clearly and unequivocally informed of the rights listed in rule 11(e) was good cause for withdrawing a guilty plea.

¶ 73 As we have stated before, a new rule of criminal procedure will not be applied retroactively if it constitutes a "clear break with the past." *Hoff,* 814 P.2d at 1123. A new rule is a clear break with the past if it caused " 'an abrupt and fundamental shift in doctrine as to constitute an entirely new rule which in effect replaced an older one.' " *Baker,* 935 P.2d at 509 (quoting *United States v. Johnson,* 457 U.S. 537, 551, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982)). A break with the past occurs when a decision "disapproves a practice this Court arguably has sanctioned in prior cases." *Id.* (internal quotation marks omitted).

¶ 74 As we concluded above, before subsection (*l*) was added to rule 11, the controlling case law only required a defendant to show good cause to withdraw his plea. And when a court failed to inform a defendant of a constitutional right listed in rule 11(e), good cause was shown. Subsection (*l*) requires a defendant to not only show that a trial court failed to strictly comply with rule 11, but that this error affected the defendant's "substantial rights." This heightened requirement clearly "disapproves of a practice" this court arguably has sanctioned before. Because the current standard fundamentally alters a defendant's rights, we decline to retroactively apply the current formulation of rule 11 to Mr. Lovell.

4. The Application of Harmless Error Review in Other Contexts Does Not Persuade Us to Extend Harmless Error Review to Rule 11(e) Violations

¶ 75 As a final argument, the State urges that "even if the 2005 amendment [adding

subsection (*l*)] does not apply to [Mr.] Lovell, this Court ... [should] apply harmless error review" to the rule 11 violations in this case. In the absence of express language in any of our cases holding that harmless error review does not apply to preserved claims of rule 11(e) violations, the State nevertheless urges us to apply harmless error review of preserved rule 11 violations because "it does so in nearly every other context," because "other states do so," or because it is good public policy. We decline to do so.

¶ 76 First, the State argues that because we apply harmless error in other contexts, we should also apply harmless error to a preserved rule 11(e) claim of error. In support of its argument, the State cites to cases involving the question of whether a trial court's error affected the outcome of a trial. *See, e.g., State v. Bales,* 675 P.2d 573, 576 (Utah 1983) (holding that erroneous instruction that flight from the scene of the crime implied guilt was harmless because there was other evidence to sustain a conviction); *State v. Chapman,* 655 P.2d 1119, 1125 (Utah 1982) (holding that testimony at trial in violation of defendant's constitutional confrontation right was harmless beyond a reasonable doubt because the testimony was cumulative); *State v. Hutchison,* 655 P.2d 635, 636 (Utah 1982) (holding that error in excluding a police officer's report was harmless where the same evidence was presented by another witness). The failure to properly inform a defendant of the rights he is waiving by pleading guilty, however, is quite different from the trial context because there is no other evidence against which to balance the errors. Because we conclude that harmless error review in the context of a trial is factually distinct from a trial court accepting a guilty plea, we decline to extend harmless error review to Mr. Lovell's motion.

¶ 77 Next, the State cites to numerous cases from other jurisdictions to support its claim that a harmless error standard that requires the defendant to show prejudice should apply to a trial court's failure to find that the defendant knew of all the rights listed in rule 11(e). The State, however, fails to discuss whether those jurisdictions require strict compliance with rule 11, or what rights their rules of procedure require a defendant to be informed of prior to pleading guilty. Rather than adopt a rule based on law from other jurisdictions that may be very different from ours, we will focus on our own statements of the law.

¶ 78 In *Hoff,* we stated that

[t]he rule announced in *Gibbons* was intended to ensure that the record demonstrates that the judge who takes the plea personally establishes that a defendant's guilty plea is truly knowing and voluntary. To that end, *Gibbons* requires that at the time a guilty plea is entered the judge should establish on the record that the defendant knowingly waived his or her constitutional rights and understood the elements of the crime.

814 P.2d at 1122. This statement demonstrates that the failure of a trial judge to inform a defendant of his rule 11(e) rights, may, in some cases, require allowing the defendant to withdraw his guilty plea. *See supra* ¶¶ 69–70; *Salazar v. Utah State Prison,* 852 P.2d 988, 991 n. 6 (Utah 1993) ("[W]e are not retreating from our holding in *State v. Gibbons,* restated in *Maguire II,* that the trial court must strictly comply with rule 11. *If this were a direct appeal from denial of a motion to withdraw a guilty plea, for example, failure to strictly comply with the rule would be grounds for reversal.*" (emphasis added) (citations omitted)).

¶ 79 The State's final argument is that we should apply harmless error because it would be good public policy to do so. Our strict compliance standard, however, despite the inflexibility implied by its label, already allows a flexible approach to determining whether or not a defendant was informed of his rights. In contrast with the federal system, under Utah law, a properly incorporated plea affidavit can be used to show strict compliance. *See, e.g., State v. Corwell,* 2005 UT 28, ¶ 21, 114 P.3d 569 (holding that "[a]lthough the district court did not discuss the limited right of appeal with [the defendant] during the plea colloquy," there was strict compliance with rule 11 because the defendant's plea affidavit informed her of the limited right to appeal and the district court properly incorporated it into the record).

Because rule 11 does not require a trial judge to personally address the defendant and only requires that the judge find that the defendant was clearly and unequivocally informed of his rights based on the record before the court, our strict compliance standard already allows the type of "record as a whole" analysis involved in other harmless error inquiries. We believe that the existing strict compliance standard already properly allows for a realistic assessment of what the defendant knows while assuring that the defendant is aware of his constitutional rights prior to pleading guilty.

## CONCLUSION

¶ 80 We hold that under the "good cause" standard, a trial court's failure to strictly comply with rule 11(e) is an error that requires reversal. Because the trial court failed to strictly comply with rule 11(e) by finding that Mr. Lovell was clearly and unequivocally informed of his right to the presumption of innocence and the right to a public trial by an impartial jury, we hold that there was good cause for Mr. Lovell to withdraw his plea. We therefore reverse the district court's denial of Mr. Lovell's motion to withdraw his plea, and remand to the district court for proceedings consistent with this opinion.

¶ 81 Chief Justice DURHAM, Associate Chief Justice DURRANT, and Justice PARRISH concur in Justice NEHRING's opinion.

¶ 82 Justice WILKINS sat on the oral argument; however, due to his retirement from this court, did not participate herein.