**STATE of Utah, Plaintiff and Appellee,**

v.

**Steven Douglas THURMAN, Defendant and Appellant.**

No. 940350.

Supreme Court of Utah.

Feb. 9, 1996.

Jan Graham, Atty. Gen. and J. Frederic Voros, Jr., Asst. Atty. Gen., Salt Lake City, for plaintiff.

Joan C. Watt and Robert K. Heineman, Salt Lake City, for defendant.

DURHAM, Justice:

In 1991, defendant Steven Douglas Thurman, distraught over his ex-wife's relationship with Howard Cook, constructed a pipe bomb in his basement and concealed it under the seat of Mr. Cook's automobile. Two days later, the bomb detonated, tragically killing Mr. Cook's eleven-year-old son Adam. Following searches of Thurman's apartment and a storage garage he was renting, the police arrested Thurman and charged him with aggravated murder, a capital offense, and other offenses involving the construction and delivery of a bomb.[1] On May 3, 1993, the day prior to his trial, Thurman pleaded guilty to aggravated murder in exchange for the State's promise not to seek the death penalty and to dismiss the other counts. On June 2, 1993, Third District Judge Michael R. Murphy sentenced Thurman to a term of life (with possibility of parole) and ordered him to pay restitution of approximately $100,000. Later that day, Thurman moved to withdraw his guilty plea. After an evidentiary hearing, Judge Murphy issued a written order denying Thurman's motion.

Thurman now appeals, arguing that he did not understand the elements of the crime to which he pleaded guilty and therefore his plea was not knowingly and voluntarily entered as Utah law requires. Specifically, Thurman asserts that section 76–5–202(1) of the Utah Code, which addresses aggravated murder, requires that the "actor intentionally or knowingly cause[ ] the death of another." He argues that he did not intend to kill Adam Cook and that in his plea colloquy he admitted only that he "knew the bomb could cause death" and that "by concealing it [he] had created a great risk of death to anyone in that vehicle." In sum, Thurman argues that the facts to which he pleaded guilty do not satisfy the statutory elements of aggravated murder by means of a bomb.

The State notes that section 76–5–202(1)(*l* ) specifically states that aggravated murder by means of a bomb requires only that "the actor knew, or reasonably should have known, that his act or acts would create a great risk of death to human life." The State contends that Thurman clearly pleaded facts sufficient to support this intent standard. In the alternative, the State argues that even if we conclude that the statute requires an intentional or knowing mental state, the record demonstrates that Thurman voluntarily pleaded guilty with full knowledge of the intentional and knowing element of the offense.

This court will "review a trial court's denial of a motion to withdraw a guilty plea under an abuse-of-discretion standard. The trial court's findings of fact made in conjunction with its decision will not be set aside unless they are clearly erroneous." *State v. Blair*, 868 P.2d 802, 805 (Utah 1993) (citations omitted). In addition, because this case requires us to interpret section 76–5–202(1), we note that statutory interpretation presents a question of law which we review for correctness.

Rule 11(e) of the Utah Rules of Criminal Procedure provides that prior to accepting a guilty plea, a trial court must determine that the defendant understands the nature and elements of the offense.[2] In *State v. Gibbons*, 740 P.2d 1309, 1312 (Utah 1987), we noted, "Rule 11(e) squarely places on trial courts the burden of ensuring that constitutional and Rule 11(e) requirements are complied with when a guilty plea is entered." As our subsequent cases have stated, *Gibbons* created a "strict compliance" rule requiring that a trial court "personally establish that the defendant's guilty plea is truly knowing and voluntary and establish *on the record*

---

**1.** For a more detailed recitation of the facts leading up to Thurman's arrest, see *State v. Thurman*, 846 P.2d 1256 (Utah 1993).

**2.** Rule 11(e) reads in relevant part as follows:
    (e) The court may refuse to accept a plea of guilty, no contest or guilty and mentally ill, and may not accept the plea until the court has found:
      ...;

    (2) the plea is voluntarily made;
    ...;
    (4) the defendant understands the nature and elements of the offense to which the plea is entered, that upon trial the prosecution would have the burden of proving each of those elements beyond a reasonable doubt, and that the plea is an admission of all those elements.

that the defendant knowingly waived his or her constitutional rights and understood the elements of the crime." *State v. Abeyta,* 852 P.2d 993, 995 (Utah 1993); *see also State v. Maguire,* 830 P.2d 216, 217–18 (Utah 1991); *State v. Hoff,* 814 P.2d 1119, 1122 (Utah 1991). Finally, in addition to confirming that the defendant understands the elements of the crime, the trial court must determine that the defendant " 'possesses an understanding of the law in relation to the facts' " for the defendant's plea to be " 'truly voluntary.' " *State v. Breckenridge,* 688 P.2d 440, 444 (Utah 1983) (quoting *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969)).

Thus, in the present case, we must determine the elements of the offense for which Thurman was charged, aggravated murder by means of a bomb, and then consider whether the record demonstrates that Thurman understood these elements and knowingly and voluntarily pleaded guilty to facts sufficient to support the offense.

### Elements of Aggravated Murder by Means of a Bomb

The elements of aggravated murder by means of a bomb are defined in section 76–5–202(1)(*l*) of the Utah Code:

> (1) Criminal homicide constitutes aggravated murder if the actor *intentionally or knowingly causes the death of another* under any of the following circumstances:
>
> . . .;
>
>> (*l*) the homicide was committed by means of a destructive device, bomb, explosive, incendiary device, or similar device which the *actor planted, hid, or concealed in any place, area, dwelling, building, or structure, or mailed or delivered, or caused to be planted, hidden, concealed, mailed, or delivered and the actor knew, or reasonably should have known, that his act or acts would create a great risk of death to human life.*

(Emphasis added.)

At issue in this case is the mental state the defendant must possess at the time he commits the acts listed in the statute: Must the State show that the "actor *intentionally or knowingly* cause[d] the death of another," as stated in subsection (1), or merely *"knew, or reasonably should have known,* that his act would create a great risk of death to human life" as stated in subsection (1)(*l*)? The State argues that the two different mental states render the statute ambiguous and that according to accepted rules of statutory interpretation, we should apply the "more specific" mental state found in subsection (1)(*l*). Thurman, on the other hand, argues that the statute is not ambiguous and that according to the statute's plain language, aggravated murder always requires an intentional and knowing mental state. We agree with Thurman.

When interpreting a section of the Utah Code, we are guided by the principle that a statute is generally construed according to its plain language. *Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1112 (Utah 1991). Only if we find ambiguity in the statute's plain language need we resort to other methods of statutory interpretation. *World Peace Movement v. Newspaper Agency Corp.,* 879 P.2d 253, 259 (Utah 1994). We conclude that the language of subsection (1) is clear and plain on its face. The statute's structure demonstrates that an intentional or knowing mental state is the threshold element of the offense of capital homicide and that this threshold element must be combined with proof of one or more of the statute's seventeen aggravating factors. This is consistent with our case law interpreting section 76–5–202(1). *See, e.g., State v. Wood,* 868 P.2d 70, 88 (Utah 1993) (conviction for aggravated murder "requires proof of a statutorily defined aggravating circumstance in addition to an intentional and knowing killing"); *State v. Johnson,* 821 P.2d 1150, 1156 (Utah 1991) ("To be guilty of first degree (or capital) murder, the actor must commit what would otherwise be a second degree murder, i.e., 'intentionally or knowingly' cause the death of another, and in addition, must do so under circumstances where at least one of several aggravating factors listed in the statute is shown to be present.").

We recognize that of the seventeen aggravating factors, only subsection (1)(*l*) contains a separate and lesser mental state. Howev-

er, the legislature's inclusion of this separate mental state, without any accompanying language suggesting that it should override the plain language of subsection (1), prevents us from discarding subsection (1)'s longstanding, clear threshold mental state requirement. Indeed, if we were to adopt the State's interpretation and apply only subsection (1)(*l*)'s lesser mental state, we would effectively give no meaning to subsection (1)'s threshold requirement that "the actor intentionally or knowingly cause[d] the death of another." *See State v. Vigil,* 842 P.2d 843, 845 (Utah 1992) ("[S]tatutory provisions should be construed to give full effect to all their terms."). We recognize that by applying the intentional or knowing mental state from subsection (1), we are giving no effect to subsection (1)(*l*)'s lesser mental state. However, if the defendant's acts do not satisfy this threshold requirement of aggravated murder, it is not necessary to consider the aggravating factors that follow.

We further note that in holding that aggravated murder by means of a bomb as defined in section 76–5–202(1)(*l*) requires proof that the actor "intentionally or knowingly cause[d] the death of another," we specifically do not reach the question of whether the legislature may constitutionally create a capital offense for aggravated murder by means of a bomb with a mental state similar to that in subsection (1)(*l*). However, before such a question could even arise, the legislature must either remove subsection (1)(*l*) from the rubric of section 76–5–202(1) or include language specifying that subsection (1)(*l*)'s lesser mental state should control to the exclusion of subsection (1)'s threshold mental state requirement.

### Thurman's Plea

Having concluded that aggravated murder by means of a bomb requires an intentional or knowing mental state, we next determine whether Thurman understood this element and pleaded guilty to facts sufficient to support a conviction. *See Gibbons,* 740 P.2d at 1312; *Breckenridge,* 688 P.2d at 444. To do so, we refer to Thurman's plea affidavit (which the record reflects was read, understood, and acknowledged by Thurman and

the trial court), the plea colloquy, and other documents incorporated into the record. *See Maguire,* 830 P.2d at 218.

In his plea affidavit, Thurman stated the elements of aggravated murder by means of a bomb as follows:

> The actor intentionally or knowingly causes the death of another by means of a bomb hidden or concealed in a place and he [sic] his act would create a great risk of death to human life.

In the sentence that followed, Thurman stated his conduct which he believed constituted the elements of aggravated murder by means of a bomb:

> Prior to May 15, 1991, in Salt Lake County, Utah, I placed a bomb I had constructed in Howard Cook's Landcruiser. It was not my intention to kill Adam Cook. However, I knew the bomb could cause death and I knew that by concealing it I had created a great risk of death to anyone in that vehicle.

During the plea colloquy, Judge Murphy again read the statement of facts contained in the plea affidavit and then asked Thurman whether he knew his acts *would* cause death. Thurman would not admit that fact:

> The court: ... And while it was not your intention to kill Adam Cook, you knew the bomb *would* cause death, and you knew that by concealing it, it [sic] had created a great risk of death to anyone in that vehicle.
>
> The defendant: It *could* cause death, yes. You said *would.*

(Emphasis added.) With Thurman's correction, Judge Murphy repeated the facts:

> The court: What I'm going to do, because I want to make sure it's very clear on the record, I'm going to recite to you the facts that you will be admitting if you plead guilty. And because you admit those facts, the state's relieved of any obligation to prove them beyond a reasonable doubt. And the facts are these: And that is, that on or about or prior to May 15, 1991, in Salt Lake County, State of Utah you placed a bomb that you constructed in Howard Cook's Land Cruiser. It was not your intention to kill Adam Cook. But you

knew the bomb could cause death, and you knew that by concealing it, you had created a great risk of death to anyone in that vehicle.

The defendant: That's correct. I understand that.

Neither the facts of the case nor the elements of aggravated murder were discussed during the remainder of the plea colloquy.[3]

It is clear from our review of the record that Thurman failed to admit facts sufficient to support an aggravated murder conviction and that the record, as a whole, fails to demonstrate that Thurman fully comprehended the nature and elements of the offense to which he pleaded guilty. The State makes much of the fact that Thurman acknowledged in his plea affidavit and in the plea colloquy that the elements of aggravated murder by means of a bomb included intentionally or knowingly causing the death of another. This argument, however, is dubious in light of the general confusion that existed among the parties, including the trial judge, concerning the proper mental state. For example, at argument on Thurman's motion to withdraw his guilty plea, the trial court repeatedly stated that the killing did not need to be intentional or knowing:

The court: The elements [sic] under intent and knowing is knowingly creating the risk of harm, not knowingly creating the death.

. . . .

The court: Before you get there, though, on the issue of intent and knowledge as an element, it is not necessary that one intentionally or knowingly caused the death. What one must intentionally and knowingly do is create a great risk of death; isn't that true?

If the intentional or knowing element of the offense was not clear to the trial court, we can hardly assume that it was clear to Thurman at the time he entered his plea.

■ Thus, although Thurman acknowledged at one point that aggravated murder by means of a bomb required an intentional or knowing killing, we credit more fully his *repeated* statements that he did not intend to kill Adam Cook and his specific refusal to admit that he knew the bomb *would* cause death.[4] As stated, *Gibbons* requires a trial court to strictly comply with the requirements of rule 11 to ensure that the defendant's plea is entered knowingly and voluntarily. 740 P.2d at 1312. We conclude that such compliance was not present in this case, where defendant failed to admit facts sufficient to support a conviction for the offense to which he pleaded guilty.

In conclusion, we hold that aggravated murder by means of a bomb requires an intentional or knowing mental state. Because our review of the record reveals that Thurman did not admit facts demonstrating an intentional or knowing mental state, we hold that the trial court abused its discretion in not allowing Thurman to withdraw his guilty plea. We reverse and remand.

---

Chief Justice Zimmerman, Associate Chief Justice Stewart, Justice Howe, and Justice Russon concur in Justice Durham's opinion.

---

**3.** Thurman's presentence investigation report is also part of the record on appeal. In the report, Thurman describes his actions at length and repeatedly indicates that the killing was not intentional or knowing.

**4.** The State points out that while Thurman said he did not intend to kill Adam Cook, he never said he did not intend to kill Howard Cook. Apparently, the State would have us conclude that Thurman's *failure to deny* an intent to kill Howard Cook allows us to infer that he acted with an intentional or knowing mental state. However, our review of the record focuses on the facts Thurman admitted, as opposed to the facts he failed to deny, and as noted, Thurman never admitted on the record to intentionally or knowingly killing anyone.