2014 UT App 224

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
ROBERT FERRETTI,
Defendant and Appellant.

Memorandum Decision
No. 20120366-CA
Filed September 18, 2014

First District Court, Logan Department
The Honorable Kevin K. Allen
No. 091100312

David M. Perry, Attorney for Appellant

Sean D. Reyes and Marian Decker, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Memorandum Decision, in
which JUDGE MICHELE M. CHRISTIANSEN and SENIOR JUDGE
PAMELA T. GREENWOOD concurred.[1]

DAVIS, Judge:

¶1      Robert Ferretti appeals the trial court's denial of his motion
to withdraw his guilty plea to intentional murder. We affirm.

¶2      Ferretti argues that he should be permitted to withdraw his
guilty plea because it was not knowingly and voluntarily entered.

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by
special assignment as authorized by law. *See generally* Utah Code
Jud. Admin. R. 11-201(6).

"[W]hether the trial court strictly complied with constitutional and procedural requirements for entry of a guilty plea is a question of law that is reviewed for correctness." *State v. Holland*, 921 P.2d 430, 433 (Utah 1996).

¶3    "A guilty plea must be knowingly and voluntarily made in order to protect a defendant's due process rights." *State v. Stilling*, 856 P.2d 666, 671 (Utah Ct. App. 1993). Rule 11(e) of the Utah Rules of Criminal Procedure "is designed to protect these rights by ensuring that the defendant receives full notice of the charges, the elements, how the defendant's conduct amounts to a crime, the consequences of the plea, etc." *Salazar v. Warden*, 852 P.2d 988, 991 (Utah 1993). Accordingly, rule 11(e) prohibits a trial court from accepting a plea until it has found, inter alia, that "the plea is voluntarily made," that "the defendant understands the nature and elements of the offense to which the plea is entered," and that "there is a factual basis for the plea." Utah R. Crim. P. 11(e)(2), (e)(4). Ferretti challenges the trial court's compliance with each of these provisions, asserting that his plea was not knowing and voluntary, because he was under the influence of an antidepressant at the time of the plea, he was not made aware of the elements of the offense to which he was pleading, and he misunderstood the relationship between the facts he admitted and the elements of the crime. He also argues that his plea was not knowing and voluntary, because the trial court misinformed him regarding the legal standard for withdrawing his plea. We address each of these arguments in turn.

¶4    First, because the issue was not preserved, we reject Ferretti's argument that his taking an antidepressant at the time of the plea hearing rendered his plea unknowing and involuntary. *See generally State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (outlining the preservation rule). Although Ferretti acknowledges the preservation issue, he urges us to consider his argument under the doctrine of exceptional circumstances. *See State v. Weaver*, 2005 UT 49, ¶ 18, 122 P.3d 566 (recognizing exceptional circumstances as an exception to the preservation rule). However, we generally apply

this exception only in the case of "rare procedural anomalies," *Holgate*, 2000 UT 74, ¶ 12, in order "to assure that manifest injustice does not result from the failure to consider an issue on appeal," *State v. Irwin*, 924 P.2d 5, 8 (Utah Ct. App. 1996) (citation and internal quotation marks omitted). Ferretti has identified no such circumstances here and we can see no basis for employing the exception under the circumstances of this case.

¶5     We also reject Ferretti's assertion that he was not made aware of the elements of intentional murder. The plea affidavit explicitly outlined the elements, the State's burden to prove them beyond a reasonable doubt if the case proceeded to trial, and the factual basis for the plea—that Ferretti drove the victim to Cache County, shot her in the head, pushed her body down an embankment, and fled. The trial court orally reviewed each paragraph of the plea affidavit in open court and confirmed that Ferretti understood these provisions.[2] Specifically, the court asked Ferretti whether he understood "that the elements of [murder] are that" he "intentionally or knowingly caused" the victim's death, to which Ferretti responded, "Yes." Ferretti argues that his statements at the end of the plea hearing that he "never intended initially" for the victim to die and that he was reluctant to say he knowingly and intentionally killed her because he "was under the influence of drugs and alcohol at the time and [they] were in an argument"

─────────────────

2. Ferretti asserts that the plea affidavit was not incorporated into the record because the trial court failed to specifically ask whether Ferretti had read, understood, and acknowledged the plea affidavit and that the trial court therefore failed to comply with rule 11 of the Utah Rules of Criminal Procedure. However, even assuming that the plea affidavit document was not properly incorporated, every provision of the plea affidavit was made part of the record at the plea hearing when the trial court reviewed the plea affidavit with Ferretti essentially word-for-word and confirmed that Ferretti understood each provision. Thus, Ferretti's argument is without merit.

indicate that he did not understand the elements. However, his earlier acknowledgment contradicts this assertion. Furthermore, after equivocating on whether he intentionally and knowingly killed the victim, Ferretti confirmed to the court that he understood that by shooting the victim in the head, he would be taking her life. Thus, the plea hearing transcript refutes Ferretti's claim that he did not understand the elements of the crime to which he was pleading.

¶6      Ferretti next argues that "the record fails to demonstrate an adequate factual basis for Ferretti's plea to murder." Ferretti compares his case to that of the defendant in *State v. Thurman*, 911 P.2d 371 (Utah 1996), who placed a pipe bomb under the seat of an automobile. *Id.* at 372. The bomb detonated two days later, killing a child. *Id.* The defendant pleaded guilty to aggravated murder based on his knowledge that the bomb *could* cause death and created a great risk of death to anyone in the vehicle. *Id.* The defendant did not admit that he knew the bomb *would* cause death and claimed that it was not his intention to kill the child. *Id.* at 374–75. However, the defendant acknowledged in his plea affidavit that aggravated murder required an intentional or knowing killing. *Id.* at 374. Despite this acknowledgment, the supreme court "credit[ed] more fully [the defendant's] *repeated* statements that he did not intend to kill [the child] and his specific refusal to admit that he knew the bomb *would* cause death." *Id.* at 375. Accordingly, the court ordered that the defendant be permitted to withdraw his guilty plea. *Id.*

¶7      Ferretti asserts that we should likewise give greater weight to his assertion that his killing of the victim was unintentional than his acknowledgment of the elements in the plea affidavit and before the court because he "did not have an accurate understanding of the relationship between the law and the facts." However, unlike the defendant in *Thurman*, who never admitted that he intended to kill the victim or that he knew his actions would result in the victim's death, Ferretti admitted that he

understood that by shooting the victim in the head, he would be taking her life; the fact that the shooting was precipitated by Ferretti's use of drugs and alcohol and an argument with the victim does not negate his intent to shoot her or his knowledge that doing so would kill her.[3] The facts Ferretti admitted sufficiently establish the elements of the crime, and the trial court therefore did not err in accepting Ferretti's plea.

¶8     Finally, Ferretti argues that he should be permitted to withdraw his plea because the trial court misinformed him that the legal standard for withdrawing his guilty plea was good cause, when the actual standard requires a showing that the plea was not knowingly and voluntarily made. *See generally* Act of Mar. 5, 2003, ch. 290, § 1, 2003 Utah Laws 1321 (amending the plea withdrawal statute, which previously permitted withdrawal of a plea "upon good cause shown," to require "a showing that [the plea] was not knowingly and voluntarily made"). We acknowledge the potentially significant difference between the two standards. *See State v. Ruiz*, 2012 UT 29, ¶¶ 31–32, 282 P.3d 998 (recognizing that the old standard gave the trial court discretion to permit a defendant to withdraw his plea for good cause even when the plea was knowingly and voluntarily entered). However, we are not convinced that a defendant's misunderstanding of the legal standard for withdrawing his plea renders that plea unknowing or involuntary, and Ferretti has referred us to no authority suggesting otherwise. Rule 11 does not require the trial court to inform the defendant of the legal standard at all. *See* Utah R. Crim. P. 11(e). And while the rule does require the trial court to inform the defendant "of the time limits for filing any motion to withdraw the

---

3. To the extent Ferretti relies on statements he made for purposes of the presentence investigation report (PSI) suggesting that the gun went off accidentally, his argument is unavailing. The PSI was created after Ferretti's guilty plea and contradicted the facts articulated in the plea affidavit and Ferretti's own statements to the trial court.

plea," *id.* R. 11(e)(7), it explicitly provides that "[f]ailure to advise the defendant of the time limits for filing any motion to withdraw a plea . . . is not a ground for setting the plea aside," *id.* R. 11(f). Rule 11's treatment of a defendant's right to receive instruction regarding the withdrawal of his plea suggests that a defendant's understanding of the rules and procedure for moving to withdraw a plea does not have constitutional implications, and we fail to see how that understanding impacts the voluntariness of a plea. Thus, we are not convinced that the trial court was required to permit Ferretti to withdraw his plea as a result of its misstatement.[4]

¶9     We hold that the trial court did not err in denying Ferretti's motion to withdraw his plea, because the plea was knowing and voluntary and the trial court strictly complied with constitutional requirements in accepting the plea. Accordingly, we affirm.

―――――――

4. Ferretti's argument also suggests that as a result of the trial court's misstatement, the court should have been bound by the good cause standard rather than the knowing and voluntary standard in ruling on his motion to withdraw his plea. Ferretti cites no authority in support of this estoppel argument and, in any event, it is by no means clear that the result would have been any different even if the good cause standard had been applied. Thus, we decline to further consider this argument.