2018 UT App 144

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
CODY C. SMITH,
Appellant.

Opinion
No. 20150736-CA
Filed July 27, 2018

First District Court, Logan Department
The Honorable Brian G. Cannell
No. 141100216

David M. Perry, Attorney for Appellant

Sean D. Reyes and Lindsey Wheeler, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion. JUDGE DAVID N. MORTENSEN concurred. JUDGE RYAN M. HARRIS concurred, with opinion, in which JUDGE DAVID N. MORTENSEN joined.

ORME, Judge:

¶1    Facing fourteen charges of sexual misconduct with children, Defendant Cody C. Smith entered into a plea arrangement whereby he pled no contest to two counts of aggravated sexual abuse of a child. Before sentencing, Defendant moved to withdraw his pleas. The trial court denied his motion and proceeded to the sentencing stage. Defendant now appeals the court's order denying his plea withdrawal motion. We affirm.

BACKGROUND

¶2    Defendant was charged with three counts of rape of a child, six counts of object rape, one count of criminal solicitation, one count of forcible sexual abuse, and three counts of unlawful sexual activity with a minor. He was bound over on all charges, and the case proceeded to trial.

*The Plea Hearing*

¶3    The trial court held a plea hearing on the second day of trial upon being informed that Defendant had reached a plea agreement with the State. At the hearing, Defendant's trial counsel informed the court that, in exchange for pleading no contest to two counts of aggravated sexual abuse of a child, the State had agreed to drop all fourteen original charges and to recommend that Defendant be sentenced to two terms of six years to life in prison. As a part of the agreement, Defendant would be taken into custody immediately after the plea hearing.

¶4    Defendant's counsel then turned her attention to the plea affidavit, which, she assured the court, she had "thoroughly" reviewed with Defendant prior to the plea hearing. The affidavit recited that the "State will stipulate to two six-to-life sentences and will argue for consecutive sentences" at the sentencing hearing, with the caveat that the State's recommendations were "not binding on the judge." It further recited that Defendant "will be taken into custody today." Finally, immediately above the space for Defendant's signature, the affidavit recited the following, in bold print: "I will only be allowed to withdraw my plea if I show that it was not knowingly and voluntarily made."

¶5    When prompted by the court, Defendant signed the plea affidavit, thereby attesting that he had "read this statement" or "had it read to [him] by [his] attorney" and that he "underst[ood] its contents and adopt[ed] each statement in it" as his own. Further, by signing, he certified that he had "fully discussed" the contents of the affidavit with his counsel and that he was "satisfied with [her] advice and assistance."

¶6 After Defendant had signed the plea affidavit, the court commenced the plea colloquy. The court began by inquiring whether Defendant had "consumed any alcohol or drugs before coming to court" and whether he was "thinking clearly." Defendant responded that he was not under the influence of any substance and that he had a clear mind. The court then asked, "Do you understand what's taking place?" Defendant responded, "For the most part, yes."

¶7 Following that cryptic comment, the court again asked whether Defendant had "any questions about what's taking place." Defendant responded,

> The only thing I really have a question on is why they're going to take me today when . . . I've complied with everything . . . . I took this after talking with my attorney, but I don't understand why they're going to take me today when I've complied with everything [and] followed through . . . . I'd just ask for a couple days so I could get some things placed in order financially, so I can set something up . . . for my two . . . children I've got. I'm not a threat. I'm not going anywhere.

At that point, Defendant's counsel turned to him, saying, "I'm sure the judge will take that into consideration." When asked by the court whether the agreement was contingent on Defendant's immediate incarceration, the State responded in the affirmative, explaining that it was necessary to prevent Defendant from "harm[ing] himself" and that he had already "been out on bail for quite some time." The court then continued the colloquy and did not broach the immediate-incarceration issue again.

¶8 After confirming that Defendant had been given "enough time to speak with" his attorney, the court asked Defendant whether he "underst[ood] the constitutional rights" that were "set forth in [the] document that [he] signed." When Defendant hesitated, the court offered this clarification:

| | |
|---|---|
| THE COURT: | Do you understand you have . . . various constitutional rights that are addressed in this document that you have signed? Do you understand that you have those various constitutional rights? |
| DEFENDANT: | Oh. Yes, sir. I do. |
| THE COURT: | Okay. And you understand that you waive those constitutional rights by pleading guilty . . . no contest? |
| DEFENDANT: | No contest, yeah . . . . |
| THE COURT: | You understand that a no contest plea, as it relates to the law, is treated the same legally as far as the impact . . . and result as a guilty plea? |
| DEFENDANT: | Yes, sir. I do, sir. |
| THE COURT: | You understand the statutory consequences of entering a guilty plea to two first-degree felony charges of aggravated sexual abuse of a child? |
| COUNSEL: | The penalties? |
| DEFENDANT: | Yeah. Oh, yes. |

The court then asked the State to provide a factual basis for the plea, and Defendant stated that he did not wish to contest the State's allegations. Finally, Defendant confirmed that, "after

speaking with [his] attorney," it was his belief that accepting the State's agreement was in his best interest.

¶9    With that, the court accepted Defendant's pleas "as having knowingly and voluntarily been given." The court further explained that Defendant had "the right to withdraw [his] guilty plea on good cause shown . . . prior to sentencing," and Defendant's counsel took no issue with the court's statement. When the hearing ended, Defendant was immediately taken into custody.

*The Plea Withdrawal Motion*

¶10    After retaining new counsel, but still prior to sentencing, Defendant moved to withdraw his no-contest pleas. In his motion, Defendant claimed that he had not read or understood the contents of the plea affidavit; that he did not understand "certain crucial aspects of his plea," including that he would be taken into custody immediately and that he would be exposed to the risk of a life sentence; that the State had improperly withheld a "quarter-inch stack" of incriminating papers during discovery; that, rather than asking for a continuance to analyze the incriminating papers, his initial trial counsel coerced him into accepting the plea agreement by showing him the papers on the evening of the first day of trial; and, finally, that the trial court had misinformed him of the standard for withdrawing his pleas. For these reasons, Defendant maintained that his initial counsel rendered ineffective assistance and that his plea was not entered knowingly and voluntarily.

¶11    The trial court addressed Defendant's motion in a bifurcated manner. In its first "partial order," the court rejected Defendant's contention that he had been misinformed of the proper legal standard because the proper "knowing and voluntary" language was reflected in the plea colloquy transcript. The court further determined that Defendant had not been prejudiced by its improper reference during the colloquy to a "good cause" standard for plea withdrawal because, as it

turned out, Defendant timely filed the motion and cited the proper standard.

¶12 Before ruling on the remaining issues in Defendant's motion, the trial court held an evidentiary hearing. At the hearing, Defendant's initial trial counsel testified that the State came to Defendant with the offer of a plea bargain on the first day of trial and that there were two "turning point[s]" in the ensuing negotiations. The first was the State's strict deadline: if Defendant did not accept the plea agreement before the second day of trial, when Victim was scheduled to testify, there would be no deal. The second was that Defendant was permitted to speak with Victim while the negotiations took place. Counsel testified that Defendant was moved by the time spent with Victim, and it was counsel's opinion that the meeting had a "huge impact" on Defendant's decision to accept the State's offer.

¶13 Defendant's initial counsel further testified that she discussed the State's offer and the contents of the plea affidavit with Defendant for a "substantial period of time" on the evening of the first day of trial and the morning of the second. To begin with, she testified that she explained to Defendant that the State insisted he be taken into custody immediately after the plea hearing. She also explained to him, "again and again," that the agreed-upon sentence was six-to-life. Additionally, in view of the "twisted and bizarre" nature of the evidence, she testified that she told Defendant that she believed accepting the offer was in his best interest. She explained that she was particularly concerned about Defendant's case after observing the jury during the first day of trial, noting that one juror had advised the court he could not "do this anymore" and asked to be excused.

¶14 Defendant's initial counsel also testified regarding the incriminating papers Defendant described in his motion. She explained that the papers, which consisted of a stack of photos the prosecution had downloaded from Defendant's phone, had been disclosed to her prior to trial in the form of a police report containing detailed descriptions of the photos. She further

testified that she had seen copies of all the photos before trial, with the exception of one, which depicted a nude girl with the word "TeenMegaWorld" printed near the bottom. Counsel explained that she had waited to view the photo until the State provided a printed copy at trial because it was her practice not to download pornographic material during discovery, but in any event, she explained, the photo was far from "the most explosive thing in the case." Although she did express concern to Defendant about the photo while discussing the State's plea offer with him, she did not consider it a "critical" piece of evidence because Defendant had not been charged with child pornography offenses and the photo did not depict Victim. Furthermore, she explained that even if she had not known about the photos prior to trial, there would have been no need to request a continuance to investigate them because Defendant admitted that they were his.

¶15 Defendant's mother and brother-in-law also testified at the evidentiary hearing, as they had been present during part of Defendant's discussion with his former counsel regarding the plea agreement. Defendant's mother testified that she found Defendant's initial trial counsel "aggressive and demanding," recalling that counsel had informed her that Defendant would likely spend the rest of his life in prison if he did not accept the State's offer. However, she also testified that she believed counsel was "very clear" about the fact that the State offered to recommend a sentence of "six to life." Defendant's brother-in-law, on the other hand, testified that counsel had said the State offered to recommend "two six-year terms." However, he also acknowledged that he was not present during Defendant's entire discussion with counsel and that he had "no knowledge" of what was said outside his presence.

¶16 Finally, Defendant himself testified at the evidentiary hearing. He denied that he had read the plea affidavit prior to the plea hearing and, despite his expressed protest at the plea hearing of the immediate incarceration provision, claimed he was unaware that he would be incarcerated immediately after

that hearing. He did not deny that, at the plea hearing, he had informed the court that he understood the rights stated in the affidavit and the maximum penalties he would face upon entering his pleas.

¶17 Following the evidentiary hearing, the court disposed of the remaining issues in Defendant's plea withdrawal motion on the record and in a second written order. Citing the contents of the plea affidavit, the transcript of the plea hearing, and testimony elicited during the evidentiary hearing, the court found that Defendant's pleas were made knowingly and voluntarily and that the factual contentions in his motion were "not credible in light of all the other evidence." Further, relying "heavily" on the testimony of Defendant's initial trial counsel regarding the relative significance of the incriminating photos, the court concluded that Defendant failed to meet his burden of demonstrating that his counsel's failure to move for a continuance or a mistrial constituted deficient performance. Accordingly, the court rejected Defendant's claim of ineffective assistance of counsel.

¶18 Soon after denying Defendant's motion, the court held a sentencing hearing. At the conclusion of the hearing, Defendant was sentenced to two concurrent prison terms of ten years to life. Defendant now appeals the court's denial of his motion to withdraw his no-contest pleas.

ISSUE AND STANDARDS OF REVIEW

¶19 Defendant maintains that the trial court erred in denying his motion to withdraw his no-contest pleas. "We review the denial of a motion to withdraw a guilty plea under an abuse of discretion standard, disturbing the findings of fact made in conjunction with that decision only if they are clearly erroneous." *State v. Ruiz*, 2013 UT App 274, ¶ 12, 316 P.3d 984. But the ultimate question of whether a trial court complied with constitutional and procedural requirements in entering a plea is

a question of law that we review for correctness. *See State v. Holland*, 921 P.2d 430, 433 (Utah 1996).

ANALYSIS

¶20    A no-contest plea may be withdrawn "only upon leave of the court and a showing that it was not knowingly and voluntarily made." Utah Code Ann. § 77-13-6(2)(a) (LexisNexis 2017). "A plea is not knowing and voluntary when the record demonstrates that 'the accused does not understand the nature of the constitutional protections that he is waiving,'" *State v. Alexander*, 2012 UT 27, ¶ 16, 279 P.3d 371 (quoting *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)), or when the record demonstrates that he entered his pleas without "'sufficient awareness of the relevant circumstances and likely consequences,'" *id.* (quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)).

¶21    Defendant contends that, contrary to the court's findings, his pleas were not made knowingly and voluntarily. Defendant advances several arguments in support of this contention. First, he argues that the court committed reversible error when it referred to the incorrect legal standard for withdrawing a plea during the plea hearing. Second, he maintains that the trial court erred in finding that he read and understood the contents of the plea affidavit before entering his pleas, including its provisions explaining that he would be incarcerated immediately after the plea hearing and that he would face a potential life sentence.[1]

---

1. In his reply brief, Defendant further argues that even if the record did support a finding that he read and understood the plea affidavit, it would still not have supported the finding that his pleas were knowing and voluntary because the affidavit itself contained "numerous errors and omissions" that were not corrected by the court at the plea hearing. But this argument comes too late. "When an appellant saves an issue for the reply brief, he deprives the appellee of the chance to respond. And

(continued…)

And third, he argues that, as a matter of law, his pleas could not have been made knowingly and voluntarily because the plea colloquy directed by the court was "fundamentally flawed."[2] We address each of Defendant's arguments in the order we have stated them.

A.     The Incorrect Statement of the Plea Withdrawal Standard

¶22    Defendant first contends it is "fundamentally unfair" that he should be held to section 77-13-6(2)'s "knowing and voluntary" standard for withdrawing a plea when the court informed him during the plea hearing that he would be permitted to withdraw his pleas upon a showing of "good cause."  As he correctly observes, the Legislature replaced the now defunct "good cause" standard with the current "knowing and voluntary" standard in 2003. *See generally* Act of May 5, 2003, ch. 290, § 1, 2003 Utah Laws 1321 (codified at Utah Code

---

(…continued)

that leaves us without a central tenet of our justice system—adversariness. That is fatal." *Kendall v. Olsen*, 2017 UT 38, ¶ 13. *See also State v. Johnson*, 2017 UT 76, ¶ 71, 416 P.3d 443 (Lee, J., concurring) (stating that issues raised by an appellant for the first time in the reply brief are considered waived).

2. Defendant also contends that his initial trial counsel's handling of the incriminating photos and failure to move for a continuance or a mistrial rendered his plea involuntary and constituted ineffective assistance of counsel. But these sections of Defendant's brief are an exact regurgitation of his motion to withdraw his plea filed *before* the evidentiary hearing. As such, Defendant does not address his initial trial counsel's testimony at the evidentiary hearing or the basis for the trial court's ruling. Accordingly, we reject these challenges. *See State v. MacDonald*, 2017 UT App 124, ¶ 49, 402 P.3d 91 (stating that we will reject an appellant's challenge where he or she fails to address the basis of the trial court's ruling).

Ann. § 77-13-6 (2017)) (amending the plea withdrawal statute, which had permitted defendants to withdraw a plea "upon good cause shown," to instead require "a showing that [the plea] was not knowingly and voluntarily made").

¶23　We have had occasion to address this argument before. In *State v. Ferretti*, 2014 UT App 224, 336 P.3d 43, the appellant argued "that he should be permitted to withdraw his plea because the trial court misinformed him that the legal standard for withdrawing his guilty plea was good cause, when the actual standard requires a showing that the plea was not knowingly and voluntarily made." *Id.* ¶ 8. As a result of the misstatement, the appellant maintained that "the court should have been bound by the good cause standard rather than the knowing and voluntary standard in ruling on his motion to withdraw his plea." *Id.* ¶ 8 n.4. We concluded that the appellant's reasoning was unpersuasive because he had "cite[d] no authority in support of this estoppel argument." *Id.*

¶24　Defendant likewise fails to cite any authority to support his similar argument, and he does not address *Ferretti*. Instead, he asserts that the trial court failed to strictly comply with rule 11 of the Utah Rules of Criminal Procedure when it mistakenly mentioned the now defunct good cause standard for withdrawing a plea. As a result, Defendant asserts that he "was yet again ill-informed as to a crucial part required by the rule 11 colloquy" and that the lack of strict compliance precluded him from entering his plea knowingly and voluntarily. Defendant is mistaken.

¶25　First, rule 11 "does not require the trial court to inform the defendant of the legal standard [for withdrawing a plea] at all." *See id.* ¶ 8. And while rule 11 "does require the trial court to inform the defendant 'of the time limits for filing any motion to withdraw the plea,' it explicitly provides that 'failure to advise the defendant of the time limits for filing any motion to withdraw a plea is not a ground for setting the plea aside.'" *Id.* (brackets and ellipsis omitted) (quoting Utah R. Crim. P. 11(e)(7), (f)). More importantly, we have stated that "[r]ule 11's

treatment of a defendant's right to receive instruction regarding the withdrawal of his plea suggests that a defendant's understanding of the rules and procedure for moving to withdraw a plea does not have constitutional implications" or affect the voluntariness of a plea. *Id.*

¶26   Second, courts are no longer required to strictly comply with rule 11. To be sure, the level of compliance required by rule 11 has a somewhat complicated history. Prior to 1987, rule 11 required substantial compliance. *See State v. Walker*, 2013 UT App 198, ¶ 34, 308 P.3d 573 (stating that "[p]rior to the Utah Supreme Court's decision in *State v. Gibbons*, 740 P.2d 1309 (Utah 1987), a trial court was required to substantially comply" with rule 11). Following the pronouncement in *Gibbons*, courts were required to strictly comply with rule 11 until the rule was amended in 2005. Under a heading entitled "[s]trict compliance not necessary," the amendment added the following language setting forth the new standard: "Failure to comply with this rule is not, by itself, sufficient grounds for a collateral attack on a guilty plea." Utah R. Crim. P. 11(l). Rather, compliance "shall be determined by examining the record as a whole," and "any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." *Id.*

¶27   Adding to the complexity of rule 11's history is the fact that it is not uncommon for criminal defendants to attempt to withdraw their pleas years and even decades after entering them. This is highlighted by Defendant's reliance on *State v. Lovell*, 2011 UT 36, 262 P.3d 803, a case decided well after the 2005 amendment. Despite *Lovell*'s 2011 issuance, our Supreme Court applied the strict compliance standard both because the defendant there had entered his plea in 1993 and because the Court applied the "clear break" principle to rule 11, which prohibits the retroactive application of an amended rule of criminal procedure if the amendment constitutes a fundamental shift in the law. *See id.* ¶¶ 3 n.1, 72–74. The Court has since abandoned the use of the "clear break" rationale and abrogated *Lovell*. *See State v. Guard*, 2015 UT 96, ¶¶ 52–53, 61, 371 P.3d 1. In

sum, the trial court was not required to strictly comply with rule 11 in the case at hand.

¶28 "[E]xamining the record as a whole," *see* Utah R. Crim. P. 11(l), Defendant has not persuaded us that the trial court's misstatement of the withdrawal standard precluded him from entering the plea knowingly and voluntarily. This is especially so given that the plea affidavit included the correct withdrawal standard and Defendant signed and entered the plea before the court misquoted the withdrawal standard. As such, there is nothing to suggest that the court's misstatement affected his substantial rights. *See id.*

B.     The Contents of the Plea Affidavit

¶29 Defendant maintains that the trial court erred in determining his pleas were knowing and voluntary because its underlying findings were not supported by the record. Specifically, he argues that the record shows that when he signed the affidavit, he was unaware of two significant provisions of the plea agreement. First, he maintains he was unaware of the requirement that he be taken into custody immediately after the plea hearing. In support, he argues that his questions at the plea hearing regarding the immediate incarceration requirement evinced a "fundamental lack of understanding" about that "crucial aspect[] of his plea." Second, he maintains he was unaware that by entering his pleas he would be exposing himself to the risk of a life sentence.[3] In

---

3. Defendant also contends that his failure to grasp the immediate incarceration and sentencing provisions of the plea affidavit "strongly suggests he did not read or otherwise understand" any other provision in the affidavit. Because he does not succeed in persuading us that the trial court clearly erred in finding he was aware of these two provisions, the premise of this argument fails, and we therefore need not discuss it further.

support of this contention, he cites his own testimony at the evidentiary hearing, together with the affidavit of his brother-in-law.

¶30 As stated above, we will disturb the trial court's findings of fact in support of its decision to deny Defendant's plea withdrawal motion "only if they are clearly erroneous." *State v. Beckstead*, 2006 UT 42, ¶ 7, 140 P.3d 1288.

¶31 Given all the evidence in the record, Defendant has not persuaded us that the court clearly erred in finding that he understood the contents of the plea affidavit, including its sentencing and immediate incarceration provisions. We acknowledge that Defendant testified at the evidentiary hearing that he had not read or understood the plea affidavit and that his initial trial counsel did not review the affidavit with him. But contrary to this testimony, Defendant's initial trial counsel testified at the evidentiary hearing that she thoroughly reviewed the plea affidavit with Defendant and explained to him the State's immediate incarceration requirement, informing him, "again and again," that the State would recommend he be sentenced to two terms of six years to life in prison. Defendant's mother, too, testified that counsel had been "very clear" about the State's "six-to-life" recommendation when explaining the terms of the plea agreement. And while Defendant's brother-in-law testified that he recalled counsel saying the State would recommend "two six-year terms," the trial court was free to instead credit the contrary testimony of Defendant's mother and his initial trial counsel.

¶32 As for Defendant's argument that his questions at the plea hearing regarding the immediate incarceration requirement demonstrated a "fundamental lack of understanding" on his part, we simply cannot agree. If Defendant had made statements during the hearing indicating that he had been broadsided by the State's immediate incarceration requirement at that hearing, his argument might have been more persuasive. But upon examining the record, we think it obvious that Defendant's questions were directed to *why*, not to *whether*, he would be

incarcerated immediately after the plea hearing. From our review of the plea hearing transcript, it is obvious that the State's demand that Defendant be incarcerated immediately did not take him by surprise. Rather, Defendant's questions were about the necessity and propriety of the demand. He asked why the State needed to take him into custody immediately when he had "complied with everything," was "not a threat," and was "not going anywhere." Far from demonstrating a lack of understanding, Defendant's questions indicate that he had given the immediate incarceration requirement some careful thought prior to the plea hearing and hoped to avoid that aspect of the plea deal with help from the court.

¶33 Accordingly, Defendant has failed to persuade us that the trial court clearly erred in finding that he understood the contents of the plea affidavit before entering his no-contest pleas. We therefore conclude that the court correctly relied on that finding when arriving at its determination that Defendant's pleas were knowingly and voluntarily made.

C.     The Plea Colloquy

¶34 Finally, Defendant contends that the trial court's determination at the plea hearing that he entered his pleas knowingly and voluntarily was erroneous as a matter of law because the plea colloquy it held pursuant to rule 11 of the Utah Rules of Criminal Procedure was "fundamentally flawed." Ultimately, we conclude that Defendant's argument is foreclosed by our Supreme Court's decision in *State v. Alexander*, 2012 UT 27, 279 P.3d 371. We do recognize, however, that the court's exchange was far from the model colloquy envisioned by rule 11. Judge Harris, who served as a district court judge before joining this court, elaborates on the deficiencies in the colloquy in his separate opinion, joined in by Judge Mortensen, who likewise previously served as a district court judge.

¶35 "In order to assist courts in determining whether a plea is knowingly and voluntarily made," our Supreme Court "created rule 11." *Id.* ¶ 24. The rule is a "prophylactic measure," which

provides, among other things, that the trial court may not accept a guilty or no contest plea unless it finds that the defendant entered it "'voluntarily'" and with knowledge of his rights and "'the nature and elements of the offense.'" *Id.* ¶¶ 17–18 (quoting Utah R. Crim. P. 11(e)(2), (e)(4)(a)). "[C]ompliance with rule 11 creates a record demonstrating that the defendant was informed of important constitutional rights." *Id.* ¶ 17.

¶36 Defendant maintains that the colloquy undertaken by the trial court pursuant to rule 11 was deficient because it "was not an in-depth exchange." In particular, Defendant faults the court for failing to specifically refer to the various rights cited by rule 11, including his right to be advised of the "maximum sentence" to which his pleas would expose him. *See* Utah R. Crim. P. 11(e)(5). And while Defendant concedes that rule 11 may be satisfied by reference to a written statement during the plea colloquy, he argues that, in this case, the trial court did not effectively incorporate the contents of the plea affidavit into the record. It was not enough, he argues, that the court asked him whether he had been given "enough time to speak with" his attorney about the affidavit. Rather, the court should have asked him, in direct and explicit terms, whether he had read and understood the entire affidavit prior to the hearing. *See State v. Maguire*, 830 P.2d 216, 218 (Utah 1991) ("The record . . . must contain a basis for [the trial court's rule 11] findings, but that record may reflect such a basis by multiple means, e.g., . . . contents of a written affidavit *that the record reflects was read, understood, and acknowledged by defendant and the court*[.]") (emphasis added).

¶37 These points are well taken. As the concurring opinion explains in greater detail, the prophylactic purposes of rule 11 would have been better served by a more thorough inquiry. Nevertheless, "[a]lthough rule 11 provides guidance for the entry of [a] plea[], any attempt to withdraw that plea is governed by statute." *Alexander*, 2012 UT 27, ¶ 19 (footnote omitted). In *Alexander*, the Utah Supreme Court emphasized that under Utah

Code section 77-13-6, "a plea may be withdrawn '*only* upon . . . a showing that [the plea] was *not knowingly and voluntarily made*.'" *Id.* ¶ 19 (alteration and emphases in original) (quoting Utah Code § 77-13-6(2)(a)). Accordingly, "a violation of rule 11 during the plea hearing" does not "automatically render[] a plea unknowing and involuntary." *Id.* ¶ 27. *See* Utah R. Crim. P. 11(l) ("Failure to comply with this rule is not, by itself, sufficient grounds for a collateral attack on a guilty plea."). Rather, to meet their statutory burden, defendants seeking to withdraw their pleas must show "that their pleas were not *in fact* knowingly and voluntarily made." *Alexander*, 2012 UT 27, ¶ 27 (emphasis added).

¶38 In the sections above, we have concluded that the court did not clearly err in finding that Defendant entered his pleas knowingly and voluntarily. Therefore, while we agree with Defendant that the trial court's plea colloquy left much to be desired, we cannot agree that the court's mistakes constituted reversible error. Because Defendant has failed to convince us that he satisfied his burden under Utah Code section 77-13-6, he is not entitled to relief from the trial court's decision.

## CONCLUSION

¶39 For the foregoing reasons, we conclude that the trial court did not abuse its discretion in denying Defendant's plea withdrawal motion. Accordingly, we affirm.

─────────

HARRIS, Judge (concurring)

¶40 I join in full in the excellent majority opinion in this case. The trial court made a factual finding that Defendant's no-contest plea was knowingly and voluntarily given, and that factual finding was amply supported by evidence in the record, including sworn testimony offered by several witnesses at the evidentiary hearing. Because the trial court properly found that Defendant's plea was knowing and voluntary, I agree that the

court's decision to deny Defendant's motion to withdraw his plea should be affirmed.

¶41    I write separately, however, to further discuss the plea colloquy between Defendant and the trial court in this case. As the lead opinion acknowledges, the plea colloquy in this case was "far from the model colloquy envisioned by rule 11." *See supra* ¶ 34 (citing Utah R. Crim. P. 11). Section (e) of that rule contains eight separate subparts, and instructs trial courts that they "may not accept" a plea until "the court has found" that the requirements of all eight subparts are met. *See* Utah R. Crim. P. 11(e); *see also id.* 11(l) (emphasizing, however, that strict compliance with the rule's requirements is not necessary so long as "substantial rights" are not affected).

¶42    Because there are so many specific requirements set forth in rule 11, conducting a plea colloquy that substantially complies with the rule's requirements takes quite a bit of time. A court intending to conduct a gold-plated plea colloquy—one that would, orally and on the record, adequately cover each of rule 11's eight requirements—would likely need to devote a significant period of time to each such endeavor, even if the colloquy goes smoothly, which it does not always do. And, given the nature of modern criminal law-and-motion calendars[4]—the most common context in which plea colloquies arise—this is time that trial judges simply do not have.

---

4. Many Utah trial judges manage large law-and-motion calendars each week, during which they accept pleas, impose sentences, consider probation issues, and adjudicate various pretrial motions. While these calendars vary from judge-to-judge and week-to-week, it is not at all unusual for a trial judge to be asked to handle over 100 cases on a single morning calendar, then turn around and handle 50 to 75 more in the afternoon. Given that each day contains only so many hours, it is no wonder that trial judges are always looking—and justifiably

(continued…)

¶43    In an attempt to make the process more efficient, written plea agreement forms have been developed that contain the information required by rule 11. Indeed, rule 11 itself allows this, specifically stating that the findings required by the rule "may be based on questioning of the defendant on the record or, if used, a written statement reciting these factors." *See* Utah R. Crim. P. 11(e). The idea is that, if a defendant has taken the time to read the plea agreement form (or have it carefully explained to him by counsel) and has come to understand its contents, a busy trial judge will not need to take the time in court, with dozens of other cases waiting, to painstakingly go through each of the requirements of rule 11 for each plea. *See State v. Mora*, 2003 UT App 117, ¶ 19, 69 P.3d 838 (stating that "[a] sufficient [plea] affidavit may be used to promote efficiency during a plea colloquy"), *disagreed with on other grounds by State v. Lovell*, 2011 UT 36, ¶¶ 65–66, 262 P.3d 803. Instead, the trial court can conduct a truncated plea colloquy designed primarily to ascertain that the defendant is in a proper state of mind to make a major decision like pleading guilty to a crime, and that the defendant has read the plea agreement form (or had it carefully explained to him) and has come to understand its contents.

¶44    Of course, the efficacy of this system depends on two facts being true: (1) that the plea agreement form really does contain all of the information that rule 11 requires, and (2) that the defendant really does understand the contents of the form. *See State v. Smith*, 812 P.2d 470, 477 (Utah Ct. App. 1991) (stating that, before a plea agreement form can be "incorporated into the record," the trial court "must conduct an inquiry to establish that the defendant understands the [form] and voluntarily signed it"); *see also Mora*, 2003 UT App 117, ¶ 20 (determining that the plea agreement form "was not properly incorporated into the record" where the trial court "made no inquiry into whether [the

(…continued)
so—for ways to streamline the management of these busy calendars.

defendant] had read, understood, and acknowledged" the form). Indeed, rule 11 itself mandates that a written plea agreement form may only be used "after the court has established that the defendant has read, *understood*, and acknowledged the contents" of the form. *See* Utah R. Crim. P. 11(e) (emphasis added); *see also State v. Collins*, 2015 UT App 214, ¶ 7, 359 P.3d 664 (focusing on whether the trial court had, during the plea colloquy, ascertained whether the defendant "*understood* everything in the plea affidavit" and whether the defendant "*understood* the resulting proposed plea agreement"). In the process of accepting pleas, it is crucial that trial courts take steps necessary to ascertain that the defendant *understands* the contents of the written plea agreement form.[5]

¶45    In this case, Defendant raises no issue—at least not in a timely manner, *see supra* ¶ 21 & n.1—with the terms of the written plea agreement form itself. Instead, Defendant asserts that his plea was not knowing and voluntary, because he claims that he did not fully understand the terms of his plea before agreeing to enter it. In order to resolve that question in this case, the trial court found it necessary to schedule and hold a three-hour evidentiary hearing, in which five witnesses testified, some of whom traveled to Logan from Salt Lake City. As noted, I agree that the trial court's ultimate resolution of that question should be affirmed.

¶46    But I lament the fact that a separate evidentiary hearing was required in this case, and that such a hearing was apparently required, at least in part, because of infirmities in the truncated plea colloquy conducted by the trial court. As noted, there is nothing inherently wrong with a truncated plea colloquy

---

5. In cases where a particular defendant's first language is something other than English, or where a particular defendant has literacy issues, this inquiry also requires taking steps to first ascertain that the defendant can access the language of the written plea agreement form.

that asks the written plea agreement form to do most of the heavy lifting. But the focus of any such truncated plea colloquy should be on attempting to ascertain whether and to what extent the defendant understands the plea agreement form. And in this respect, the trial court's plea colloquy was deficient.

¶47 Defendant correctly points out that the trial court never actually asked him whether he had read the plea agreement form or whether he understood its contents.[6] I can think of no more important question to ask in a truncated plea colloquy that intends, in an effort to save time on a busy calendar, to depend heavily on the contents of the written form. And I can think of no possible reason not to ask it.[7]

---

6. The trial court did ask Defendant if he was "thinking clearly" that day, and if he had "consumed any alcohol or drugs" that day that might impair his thinking or cloud his judgment. Defendant answered in the negative. The trial court also asked Defendant if he was aware that he was giving up "various Constitutional rights," referencing the plea agreement form, and whether he understood "the penalties" associated with his plea. Defendant responded in the affirmative. These are important questions also, and the trial court was correct to ask them.

7. In other legal contexts, having an opportunity to read and review a document—even where that opportunity is not taken—might be sufficient to legally bind a party to the contents of a document. But where a defendant is pleading guilty to a crime, the mere fact that the plea agreement form was available for defendant to peruse is by itself insufficient. *See State v. Smith*, 812 P.2d 470, 477 (Utah Ct. App. 1991) (stating that "if a[] [plea] affidavit is used to aid Rule 11 compliance, it must be addressed during the plea hearing" and the trial court "must conduct an inquiry to establish that the defendant understands the affidavit"). In this context, the defendant must not only have an *opportunity* to read the form, the defendant must actually

(continued…)

¶48    Had that question been asked in this case, and had Defendant answered in the affirmative, there may have been no need for a separate evidentiary hearing in order to properly adjudicate Defendant's motion to withdraw his plea. *See*, *e.g.*, *Collins*, 2015 UT App 214, ¶ 7 (determining merely from examination of a plea colloquy—in which the defendant affirmatively answered the trial court's question about whether he understood the contents of the form—that the trial court's finding that the plea was knowing and voluntary should be affirmed). The trial court's failure to ask that question left it with no direct record evidence—without holding the separate evidentiary hearing—that Defendant understood the contents of the plea agreement form. In order to be able to make the factual finding necessary to adjudicate the motion to withdraw the plea, the trial court had to convene a separate evidentiary hearing, and rely (largely) upon testimony from Defendant's former attorney, who testified that she read the entire agreement to Defendant, "word-for-word," and that she spent "an incredible amount of time" over a two-hour period going over the agreement with Defendant "again and again and again." Similar evidence, however, could have and should have already been in the record, if the court had asked Defendant, at the original plea hearing, basic questions about his understanding of the contents of the plea agreement form.

¶49    In the end, the trial court reached the proper result. But its path in arriving at that destination was unfortunately inefficient and nonlinear. A more focused (but still truncated) plea colloquy would have gone a long way toward streamlining this case and making the process more efficient for all participants.

───────────

(…continued)
*understand* the contents of the form. *See* Utah R. Crim. P. 11(e) (stating that a written plea agreement form may be used only if "the court has established that the defendant has read, understood, and acknowledged the contents" of the form).